FLINT *et al.*, *Appellants*, v. THE HUTCHINSON SMOKE BURNER COMPANY.

Division One, June 6, 1892.

1. **Slander and Libel:** EQUITY: INJUNCTION. A court of equity has no power to restrain a libel or slander, whether of a person or of his title to property.

2. ———: ———: ———: PRACTICE. The question of slander or libel should first be determined by a jury in an action at law, and after a verdict for the plaintiff he can have an injunction to restrain the further publication of that which the jury has found to be an actionable libel or slander.

3. ———: REMEDY. One who falsely represents to persons likely to deal with another introducing an invention, that the latter's patent is an infringement on his, and that persons using it would be liable as infringers, is guilty of slander of title, and the remedy is in an action at law.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*Paul Bakewell* and *R. A. Bakewell* for appellants.

(1) False statements made by an individual in regard to articles manufactured by another, for the purpose of preventing sales by him of such articles, and which do in fact prevent such sales, or injure the manufacturer in his business, constitute a cause of action. *Snow v. Judson*, 38 Barb. 210; *Benton v. Pratt*, 2 Wend. 385; *White v. Merritt*, 3 Seld. 352; *Gallagher v. Brunch*, 6 Conn. 346. (2) A patentee is not entitled to publish statements of his intention to institute legal proceedings, in order to deter persons from purchasing alleged infringements of his patent, if he has no *bona fide* intention to follow up his threats by taking such proceedings, and the court will, in such case, restrain him from making such publication. *Axman v. Lund*, L. R. 18 Eq. 330; *Rollins v. Hincks*, L. R. 13 Eq. 355; *Emack v. Kane*, 34 Fed. Rep. 46. (3) It is no defense to an action for such false representations to allege that defendant holds a patent giving him the exclusive right to use the particular article which he claims the plaintiff's article resembles, and that the federal courts have exclusive jurisdiction of all causes of action for any violation of that exclusive right. No question of patent or no patent, or in respect to any right the defendant may have under his patent, or to any violation of such right, can arise in such an action, so as to deprive the state court of jurisdiction. *Benton v.*

*Pratt*, 2 Wend. 385; *Snow v. Judson*, 38 Barb. 210; *White v. Merritt*, 3 Seld. 352; *Hovey v. Rubber Tip Co.*, 57 N. Y. 124; Townshend on Slander & Libel, sec. 206, and cases cited. (4) Language concerning a thing, published without lawful excuse, is actionable if pecuniary damage is a natural and proximate consequence of the publication. No special damage need be proved. Words spoken of one in the way of his profession or trade, from their natural or immediate tendency to produce injury, the law adjudges to be defamatory without the allegation or proof of special damage. And an action will lie for a false and malicious statement disparaging the article that another sells. Townshend on Libel & Slander [4 Ed.] secs. 146–150, p. 157; Odgers on Libel [2 Ed.] pp. 114, 223; *Thomas v. Williams*, 14 Ch. Div. 864; Newell on Defamation, p. 181. (5) A court of equity will sometimes interpose by injunction to prevent the perpetuation of a wrong, where the wrong consists in the publication of a statement injurious to the business of another, the false and fraudulent statement being an attack on the business of a rival in business. 20 Cent. Law Jour., p. 13, note, and review of cases; Townshend on Libel & Slander [3 Ed.] pp. 95, 336; Odgers on Libel [2 Ed.] p. 274; High on Injunctions, sec. 1015; *Emack v. Kane*, 34 Fed. Rep. 46: *Routh v. Webster*, 10 Beav. 561; *Hill v. Davies*, 21 Ch. Div. 798; *Hayward v. Hayward*, 34 Ch. Div. 198.

*Seddon & Blair* for respondent.

(1) The offense charged is a libel, and falls within the generic title of "slander or libel of title." *Mayrose v. Adams*, 12 Mo. App. 329; *Hastings v. Giles*, 51 Hun, 364; *Lovell Co. v. Houghton*, 54 N. Y. Sup. Ct. 60. (2) Courts of equity will not restrain the publica-

tion of either libels or slanders. *Life Ass'n v. Boogher*, 3 Mo. App. 177; *Clark v. Freeman*, 11 Beav. 112; *Ins. Co. v. Knott*, L. R. 10 Ch. App. 142; *Machine Co. v. Domestic*, 49 Ga. 73; *Boston v. Florence*, 114 Mass. 69; *Whitehead v. Kitson*, 119 Mass. 484; *Raymond v. Russell*, 143 Mass. 295; *Wheel Co. v. Bemis*, 29 Fed. Rep. 95; *Kidd v. Horry*, 28 Fed. Rep. 774; *Gas Co. v. Gas Co.*, 100 Mo. 501.

BLACK, J.—This case is now before us on the plaintiff's appeal from a judgment sustaining a demurrer to the petition. The petition discloses the following facts:

The plaintiffs, Samuel E. Flint and William F. Mills, are the owners of letters patent issued by the United States in 1888, for a smoke-preventing device. The defendant corporation is the owner of three letters patent issued in 1877 and 1878 for a device for aiding combustion in steam-boiler and other furnaces, and an air-feeding attachment for locomotives, all issued to William S. Hutchinson. It is alleged that the inventions described in the Hutchinson patents are restricted and most narrow in their scope.

Plaintiffs state further that they were negotiating with the Mermod & Jaccard Jewelry Company, of St. Louis, for the erection of a smoke-preventing device, to be constructed in accordance with their patent; that the defendant wilfully and maliciously, and with the intent to injure the plaintiffs in the manufacture and sale of their smoke-preventer, served upon the jewelry company a written notice, thereby notifying that company that the smoke-consuming device attached to its furnace by Flint, one of the plaintiffs, was an infringement upon the Hutchinson patents, and that the jewelry company would be held responsible for royalty, costs and damages; that defendant served the notice and

made the statements therein set forth, knowing that they were false, with the malicious intent and purpose of injuring the plaintiffs in their business of manufacturing and selling their device; that the jewelry company, fearing suit in consequence of the notice, refused to allow plaintiffs to put up their device until they gave the jewelry company an indemnifying bond, which they were obliged to do.

It is then averred that defendant gave other like notices to plaintiffs' customers, and to other persons about to use their device; that these persons fearing lawsuits have refused to deal with the plaintiffs; that, before the issuing of these notices, the plaintiffs were doing a large and lucrative business in smoke consumers, and that the loss in their trade in consequence of the notices is very great, but difficult to estimate.

The plaintiffs allege further that they are pecuniarily responsible; that their device is no infringement whatever upon the Hutchinson patents; that they notified the defendant that they would defend any suit or suits brought by defendant for infringement; that they believe defendant does not intend to sue them or their customers, but intends [maliciously to continue to serve such false notices, thereby intending to injure their business. They pray for an injunction restraining defendant from making, stating or publishing, by notice, circular or otherwise, that their device infringes any of the three Hutchinson patents, and for damages in the sum of $10,000.

There is no doubt but a court of equity has inherent power to restrain the wrongful use of a trademark, or the unauthorized use of a man's name, or the use of his letters against his will; but it is evident that this case does not fall within either of these classes. Here the complaint is that defendant falsely and maliciously notified persons to whom the plaintiffs were

Flint v. The Hutchinson Smoke Burner Co.

about to sell their device that it infringed the defendant's patents. Though these notices do not defame the reputation of plaintiffs as individuals or men of business, they do deny the right of plaintiffs to make and sell the particular smoke-preventing device. "Where the plaintiff possesses an estate, or interest in any real or personal property, an action lies against anyone who maliciously comes forward, and falsely denies or impugns the plaintiff's title thereto, if thereby damage follows to the plaintiff." Odgers on Libel & Slander [2 Ed.] p. 139. To the same effect is Townshend on Slander & Libel, section 206. Such an action is denominated slander of title, and this, too, whether the slander is published through the medium of words spoken, written or printed. It was held by the court of appeals, and properly held, that an action at law would lie for a slander of title of letters patent. *Meyrose v. Adams*, 12 Mo. App. 330. There is no doubt but the petition in this case states a cause of action at law, but the important question is whether a court of equity has power to enjoin the slander before a trial at law. The circuit court held that it had no such power, and, hence, dismissed the bill, and it is this ruling which is now before us for review.

Mr. Odgers in the first edition of his book laid it down in clear and emphatic terms that a court of equity possessed no such power. He said: "No injunction can be obtained to prohibit the publication or republication of any libel, or to restrain its sale. The matter must go before a jury, who are to decide whether the words complained of are libelous or not. The crown has no authority to restrain the press, and the courts whether of law or equity cannot, till after verdict, issue any injunction in respect of any libel, save such as are contempts of court

Vice-Chancellor MALINS asserted a contrary doctrine in *Springhead-Spinning Co. v. Riley*, L. R. 6 Eq. Cas. 551, and in *Dixon v. Holden*, L. R. 7 Eq. Cas. 488. In the latter case he says: "In the decision I arrive at I beg to be understood as laying down that this court has jurisdiction to prevent the publication of any letter, advertisement or other document, which, if permitted to go on, would have the effect of destroying the property of another person, whether that consists of tangible or intangible property, whether it consists of money or reputation."

In the subsequent case of *Assurance Co. v. Knott*, L. R. 10 Ch. App. 142, the plaintiff was a life assurance company, having a large income. The defendant published a pamphlet in which he commented on the business of several companies. The pamphlet contained statements to the effect that the affairs of the plaintiff were managed with reckless extravagance, and that it was insolvent. The bill alleged that the statements were false, that they would be injurious to the plaintiff and diminish its profits. Vice-Chancellor HALL refused an injunction, and the plaintiff appealed. Lord CAIRNS considered the bill as based on a libel only, and then proceeded to say if "these comments do amount to a libel, then, as I have always understood, it is clearly settled that the court of chancery has no jurisdiction to restrain the publication merely because it is a libel." He refers to the opinions of Vice-Chancellor MALINS before mentioned, and of them says: "I am unable to accede to these general propositions. They appear to me to be at variance with the settled practice and principles of this court, and I cannot accept them as an authority for the present application."

The chancery division, in subsequent cases, recognized the binding force of *Assurance Co. v. Knott*, but

that division seems to have adhered to the former opinions of Vice-Chancellor MALINS, placing, at first, stress upon certain provisions of the judicature act. It seems to be now conceded that that act in no way enlarged the principles on which a court of equity would act in granting injunctions. Mr. Odgers makes a full review of the many English cases, and says it must be taken as the present settled practice in the chancery division to restrain libels and slanders on an interlocutory application, but he gives it as his opinion that the practice is an innovation, and violative of the liberty of the press and free speech, and that the rulings will not stand the test in the house of lords. Odgers on Libel & Slander [2 Ed.] pp. 351, 364.

It must, we think, be conceded that the law on this subject in that country is, at this time, in a most unsatisfactory state; and it is quite clear that those prior decisions there, which we are in the habit of looking to as the foundation of our law, deny the right of a court of equity to enjoin a libel or slander. There are exceptions in star chamber times, but such exceptions serve to make firm the general rule that a court of equity possessed no such power. The great weight of American authority is to the same effect.

The plaintiff, in *Brandreth v. Lance*, 8 Paige, 24, sought to restrain the publication of a pamphlet which purported to be a literary work, but was an intended libel on the plaintiff. As the publication could not be regarded an invasion of the literary or medical property rights of the plaintiff, an injunction was denied, though the publication was a gross libel upon the plaintiff personally. A court of equity, it was held, had no jurisdiction to restrain a libel. The remedy was an action at law.

In *Boston Diatite Co. v. Mfg. Co.*, 114 Mass. 69, GRAY, C. J., speaking for the court, said: "The jurisdiction of a court of chancery does not extend to cases of libel or slander, or of false representations as to the character or quality of the plaintiff's property, or as to his title thereto, which involve no breach of trust or of contract." The court in that case regarded the opinions of Vice-Chancellor MALINS, before noted, as inconsistent with well-settled principles of law. *Whitehead v. Kitson*, 119 Mass. 484, was quite like the present case. There plaintiffs and defendant held letters patent for inventions. After the plaintiffs had introduced their invention and spent much time and money in doing so, the defendant falsely represented to persons likely to deal with the plaintiffs, that their patent interfered with his patent, and that persons using the patent of plaintiffs would be infringers, and become liable as such. The court held that the case made by the bill was not within the jurisdiction of a court of equity. *Clark v. Dean*, 143 Mass. 292, asserts the same principle. These Massachusetts cases were cited with approval in *Consumers' Gas Co. v. Gaslight & Coke Co.*, 100 Mo. 501. To the same effect are the following cases: *Singer Mfg. Co. v. Mfg. Co.*, 49 Ga. 70; *Kidd v. Horry*, 28 Fed. Rep. 773; *Baltimore Car-Wheel Co. v. Bemis*, 29 Fed. Rep. 95; *Life Ass'n of America v. Boogher*, 3 Mo. App. 173.

We live under a written constitution which declares that the right of trial by jury shall remain inviolate; and the question of libel or no libel, slander or no slander, is one for a jury to determine. Such was certainly the settled law when the various constitutions of this state were adopted, and it is all-important that the right thus guarded should not be disturbed. It goes hand in hand with the liberty of the press and free speech. For unbridled use of the tongue or pen the

Flint v. The Hutchinson Smoke Burner Co.

law furnishes a remedy. In view of these considerations a court of equity has no power to restrain a slander or libel; and it can make no difference whether the words are spoken of a person or his title to property.

In either case it is for a jury to first determine the question of slander or libel in an action at law. This, we conclude, is the result of the better cases in this country and in England.

But it is argued in behalf of the appellant that this is a case of libel, *plus* something else. If that something else is sufficient to give a court of equity jurisdiction, then the jurisdiction is not defeated because there is libel or slander added. But what is that something else in this case? It is said to be that unfair competition in business, which the courts are prompt to prevent in trade-mark cases—that unfair competition which results in loss of business, owing to the dread men have of lawsuits. The answer to all this is that slander of a person in his business or profession, or of title to his property is often, if not most generally, accompanied with loss of business. Indeed, it is generally laid down that, to sustain an action for slander of title, special damage must be shown to have arisen from the defendant's words. But such incidents arising from the wrong do not give a court of equity the right to interfere by injunction. All this is clearly stated in *Assurance Ass'n v. Knott, supra.*

We see nothing in this case save slander of title, and the remedy is at law. After verdict in favor of the plaintiffs, they can have an injunction to restrain any further publication of that which the jury has found to be an actionable libel or slander. Odgers on Libel & Slander [2 Ed.] p. 340. As slander of title is all we can see in this case, the judgment will be, and it is, affirmed. All concur