**OTIS & CO. et al. v. NATIONAL ASS'N OF SECURITIES DEALERS, Inc., et al.**

No. 329—49.

United States District Court
District of Columbia.

June 6, 1949.

As Amended July 6, 1949.

Joseph L. Weiner, New York City, Arnold, Fortas & Porter, Washington, D. C. (oral argument by Thurman Arnold, Washington, D. C.), for plaintiffs.

Howard C. Westwood, Covington, Burling, Rublee, Acheson & Short, Washington, D. C., Daniel M. Gribbon, and John W. Lindsey, Washington, D. C., for defendant National Association of Securities Dealers, Inc., defendant.

Louis Loss, Associate General Counsel, Securities & Exchange Commission, and Edward H. Cashion, E. Russell Kelly, and Charles J. Odenweller, Jr., Attorneys, Securities & Exchange Commission, Washington, D. C., for defendants Securities and Exchange Commission, Edmond M. Hanrahan, Robert K. McConnaughey, Rich-

ard B. McEntire, Harry A. McDonald, and Paul R. Rowen, defendants.

MORRIS, District Judge.

This is an action in which the plaintiffs seek to enjoin the defendants pendente lite and permanently from taking any action to compel the disclosure of confidential communications between plaintiffs and any of their attorneys, and from making or enforcing any order, or taking any steps whatever against plaintiffs for failure to disclose such communications. It is further sought that the defendants be required, pending the determination of this action and permanently, to vacate a decision of District Business Conduct Committee of District No. 10 of the defendant National Association of Securities Dealers (hereinafter referred to as the District Committee), whereby the plaintiffs were "ordered suspended for a period of two years, commencing upon the expiration of all stays provided by law and the rules of the Association; provided, that such suspension shall terminate sooner in the event respondents furnish or cause to be furnished a full and frank report in writing containing the information required by the Committee's letter of August 6, 1948." The defendants in their respective answers seek dismissal of the complaint on the ground that the Court does not have jurisdiction, and that the complaint fails to state facts which entitle the plaintiffs to the relief sought. By stipulation these defenses are to be treated as a motion to dismiss.

Prior to the hearing on these issues, the plaintiffs secured a temporary restraining order, and by motion seek an injunction pendente lite to restrain the defendant National Association of Securities Dealers from engaging in a campaign of publicity of a misleading character, reflecting upon the plaintiffs, and specifically to prevent the publication of a proposed article now in page proof and about to be circulated to all members of the National Association of Securities Dealers. A hearing was had upon the motion to dismiss and the motion for temporary injunction, and subsequently memoranda supporting the contentions of the respective parties have been filed, together with reply memoranda thereto.

The present action is related to a prior one in this Court, in which the Securities and Exchange Commission sought to enforce a subpoena against two of the attorneys of the plaintiffs to compel disclosure of certain communications notwithstanding the claim of immunity as privileged communications on the ground that a prima facie showing of fraud had been made. This Court, deciding that no prima facie showing of fraud had been made, declined an order to enforce said subpoena.[1] Prior to the final decision in that cause, the defendant association was made a party, and was restrained pendente lite from taking action to secure a disclosure of the privileged communications in controversy. Following the decision in the subpoena enforcement action, in which a counter-claim seeking injunctive relief against the Securities and Exchange Commission was dismissed, that Commission carried on proceedings to revoke the registration of the plaintiffs. Thereupon the plaintiffs instituted a second action in this Court, seeking to restrain the Securities and Exchange Commission from prosecuting such proceedings on the ground that the decision in the subpoena enforcement action settled beyond further inquiry that there was no fraud on the part of the plaintiffs in connection with the transactions to which the privileged communications related, and, therefore, such transactions could not be the basis of any disciplinary action against the plaintiffs. This Court upon motion, dismissed the complaint in that action upon the ground that its decision in the subpoena enforcement action was not an adjudication that barred the proceedings sought to be enjoined, and that this Court did not have jurisdiction to interfere with those proceedings. An appeal from the decision of this Court was taken to the United States Court of Appeals for the District of Columbia, which granted a temporary stay to maintain the status quo. A decision in that case has just been rendered.[2] The Court of Appeals

[1] Securities and Exchange Commission v. Harrison, et al., D.C., 80 F.Supp. 226.

[2] Otis & Co. v. Securities and Exchange Commission, et al., D.C.Cir., 176 F.2d 34.

reversed the action of this Court in dismissing the complaint upon the ground that, by the allegations of the complaint, which were admitted by the motion to dismiss, the record in the administrative proceedings sought to be enjoined would be precisely the same on the question of prima facie fraud as the record considered by this Court in the subpoena enforcement action, wherein it was held that such record did not constitute a prima facie showing of fraud. The Court of Appeals in that view considered that the Commission was barred from further inquiry into the question of fraud until by its answer it had challenged the allegations of the complaint and by its proof had shown that there was further evidence of fraud not disclosed by the record in the subpoena enforcement action. Clearly that decision is not dispositive of the questions presented in the instant action, for here the Association is asserting its right to secure from the plaintiffs the privileged communications, notwithstanding their privileged character, because of the alleged obligation of a member to furnish reports that are called for under the Code of Procedure for Handling Trade Practice Complaints. No showing of fraud is relied upon, and no record of any evidence of fraud can here be asserted as res judicata.

After the decision of this Court in the case last referred to, and while it was pending in the Court of Appeals, the District Committee of defendant association directed the plaintiffs by a second notice, dated November 12, 1948, to furnish the report in writing, originally requested by letter to Otis & Company, dated August 6, 1948, stating:

"1. What was the substance of all conversations between Cyrus S. Eaton and Marvin C. Harrison, directly or indirectly concerning Kaiser-Frazer Corporation, which took place during the period from February 4, 1948 to February, 1948 [sic.],[3] both inclusive?

"2. What was the substance of all conversations between Cyrus S. Eaton and Robert J. Buckley, directly or indirectly concerning Kaiser-Frazer Corporation, which took place during the same period?"

The plaintiffs declined to furnish the statement requested on the ground that recent decisions established that such communications were privileged, and they should not be required under the rules of the Association to take any action which would destroy such privilege. At a hearing set by the District Committee on December 23, 1948, that Committee decided that the failure of the plaintiffs to furnish the report called for constituted a violation of Section 5, Article IV, of the Rules of Fair Practice of the defendant Association,[4] and thereupon ordered that the membership of Otis & Company and the registrations of Cyrus S. Eaton and William R. Daley be suspended, as stated in that part of the complaint already referred to.

It is provided by the rules of the Association that any disciplinary action by a District Committee shall be subject to review by the Board of Governors, either upon its own motion or upon application by any party aggrieved thereby, and that application to the Board of Governors for review shall operate as a stay of any such disciplinary action until a decision is rendered by the Board of Governors upon such review.[5] Application for review of the action taken by the District Committee has been made to the Board of Governors, which review is awaiting disposi

---

[3] It seems obvious from the record that this is intended to be February 9, 1948.

[4] Section 5. For the purpose of determining whether it should file a complaint against any member of the Corporation pursuant to Section 3 of this Article, any District Business Conduct Committee * * * shall have the right (1) to require such member of the Corporation to submit a report in writing with regard to any matter involved in any such investigation, and (2) to inspect the books, records and accounts of any such member of the Corporation with relation to any matter involved in any such investigation. Any refusal on the part of such member of the Corporation to make any report as required in this Section, or to permit any inspection of books, records and accounts as may be validly called for under this Section, shall be sufficient cause for suspending or cancelling the membership of such member in the Corporation.

[5] Code of Procedure for Handling Trade Practice Complaints of National Association of Securities Dealers, Inc., Sec. 14.

tion of the instant action. It is provided by statute that, if any registered security association shall take any disciplinary action against any member thereof, such action shall be subject to review by the Securities and Exchange Commission, and such application to the Commission for review shall operate as a stay of such action until an order is entered upon such review.[6] It is further provided by statute that any person aggrieved by an order issued by the Securities and Exchange Commission in connection with such disciplinary action may obtain a review of such order in the Circuit Court of Appeals of the United States within any Circuit wherein such person resides, or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such Court within sixty days after the entry of such order a written petition praying that the order of the Commission be modified or set aside in whole or in part. While the statute provides that the petition for review shall not operate as a stay of the Commissions' order, unless specifically ordered by the Court, obviously the Court may, upon application, grant such stay.[7] Surely such Court is fully competent, not only to settle any questions of law involved in this controversy, but also to deal with any factual malfeasance on the part of the Association, the Commission, or members thereof, alleged in the present complaint, in so far as such alleged conduct affects the validity of any order it has under review.

◼ It is thus apparent that the plaintiffs have not yet exhausted their remedy even before the final authority of the Association, and in the event they are aggrieved by the action of that authority, statutory provision is made for review by the Securities and Exchange Commission, from the action of which, if they are aggrieved, specific statutory provision is made for judicial review. Furthermore, it is equally apparent that no final action adverse to the plaintiffs can be effective until they have had opportunity to apply to a Court of Appeals for a stay of such action. If the plaintiffs could be coerced, either by the Association or the Securities and Ex-

change Commission, in divulging the communications which have held to be within the attorney-client privilege short of a judicial determination that the plaintiffs could be legally required in the circumstances to divulge such confidential communications, I would not have the slightest doubt that this Court could and should undertake a determination of the rights of the parties with respect to these questions; but that is not the case. The plaintiffs have a clear right to insist upon a judicial determination by a constitutional court of the right of the Association to require a disclosure of privileged communications which would destroy such privilege before being made to suffer the severe sanctions imposed by the Committee for non-disclosure. By insisting upon such right, they may secure it. Beyond the contention with respect to threatened publicity hereafter discussed in this memorandum, no showing is made which would take this case out of the principles laid down in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and subsequent cases following that decision. I must conclude, therefore, that, unless the matter of threatened publicity can be considered an appropriate subject with which this Court in this case may deal, the Court does not have the power to grant the relief sought, and the complaint must be dismissed.

While the complaint does not allege any threatened publicity which is sought to be enjoined, a motion for a restraining order and for a temporary injunction has been filed, setting out the threatened publication of an article by the Association, which it is charged will cause irreparable injury to the plaintiffs. The article in question, the page proofs of which have been filed as an exhibit in evidence, recites the filing of the complaint in this case, the action of the District Committee, to which the complaint is addressed, and the various steps taken in the Association and in the courts with respect to this controversy. It is emphasized in the article that the plaintiffs are in good standing in the Association, and will so remain, unless the action of the Board of Governors, the

---

Securities and Exchange Commission, and the Court of Appeals are all adverse to them. It is insisted by the plaintiffs that the accepted practice uniformly followed by the Association has heretofore been to give no publicity whatever to any disciplinary action, unless and until such action became final, and indeed such was the representation made by the Association to this Court on the occasion of an asking for a preliminary injunction before Judge Letts in one of the antecedent actions in this controversy. It was subsequent to that time that, by resolution of the Board of Governors, the Executive Committee was empowered to authorize public statements, and it is claimed that the Executive Committee by telephone authority authorized the statement intended to be published.

As this Court has heretofore stated, it is well recognized administrative law that injurious publicity ought not to be resorted to in lieu of authorized and lawful sanctions, and I have no doubt that, in an appropriate action where it was shown that injurious publicity was being improperly resorted to, this Court would have ample power to grant injunctive relief. Aside from the fact that the complaint in the instant case was not brought to secure such relief, I do not believe that the article intended to be published is of such injurious character that even upon a proper complaint injunctive relief should be granted. That question should be considered in the realities of its setting. The publicity that has attended the controversy out of which the present action, among others, has emerged has been nation wide. The fact of the action by the District Committee became publicly known with the filing of the complaint in this case. The article now in question is far more of a defensive statement than it is an attack upon the plaintiffs; indeed, in the present posture of the case, any such attack by the Association, having as it does the quasi-judicial responsibilities of a government instrumentality, would be a far greater reflection upon the Association than it would be upon the plaintiffs. The Association's Code of Procedure specifically provides that no com-

munication from any member addressed to any Business District Committee with respect to or involving any grievance against any member shall be deemed to be a privileged communication.[8] Clearly then, if the action of the District Committee is effective, the privilege of the communications here involved would be destroyed. One would suppose that the Association would be reluctant to give widespread impression, under its hastily-acquired right to make public statements, that it was exercising its disciplinary power so harshly until there has been judicial determination that it has the right to do so.

For these reasons, I do not consider that the threatened publication of the article referred to affords any basis upon which relief by this Court can be granted. The complaint will be dismissed.

[8] Code of Procedure for Handling Trade Practice Complaints of National Association of Securities Dealers, Inc., Sec. 23.