**BIRNBAUM et al.**

v.

**WILCOX–GAY CORP. et al.**

**No. 53 C 790.**

United States District Court
N. D. Illinois.
Oct. 21, 1953.

Gerald G. Bolotin, Manuel E. Cowen, Jack I. Gray, Chicago, Ill., for plaintiffs.

I. Harvey Levinson, Chicago, Ill., Gale L. Marcus, Chicago, Ill., for defendants.

HOFFMAN, District Judge.

This case involves several preliminary motions in a stockholders' derivative suit to redress certain wrongs alleged to have been committed by the controlling officers and directors. The complaint, so far as pertinent to the decision on the pending motions, alleges:

(a) The plaintiff Birnbaum became a stockholder of the principal defendant, Wilcox-Gay, in October, 1951, and the plaintiff Rosenberg in January, 1951.

(b) The jurisdiction of the court is predicated solely on diversity of citizenship.

(c) On August 22, 1950 (prior to the time plaintiffs acquired their stock), Wilcox-Gay acquired the entire capital

stock of Majestic Radio and Television, Incorporated, in exchange for its own stock. Thereafter, on the dissolution of Majestic, its assets and liabilities were acquired by Wilcox-Gay. Leonard Ashbach, President of Wilcox-Gay, was the sole owner of Majestic and it is averred, in a vague sort of way, that he acquired an excessive amount of Wilcox-Gay stock as a result of the merger.

(d) Ashbach was personally indebted to Wilcox-Gay at the time of the merger, contrary to the laws of the State of Michigan where Wilcox-Gay was incorporated. It is further stated that the 12/31/51 statement of Wilcox-Gay shows an indebtedness to certain companies wholly owned by Ashbach which likewise constitutes a violation of Michigan law. Plaintiffs further state that they are informed and believe that such indebtedness is still outstanding.

(e) False reports were filed with the Secretary of State of Michigan in that they failed to show the aforesaid loans by Wilcox-Gay.

(f) Wilcox-Gay, from September, 1950, to date, fraudulently sold allegedly obsolete merchandise to Leonard Ashbach Enterprises, Inc., a company wholly owned by Ashbach, at less than its value.

(g) Excessive salaries were paid to certain officers for the years 1950–1952.

(h) Wilcox-Gay paid expenses and salaries which should have been paid by companies owned by Ashbach.

(i) Wilcox-Gay's officers and directors acquiesced in the wrongful practices.

(j) Leonard Ashbach Enterprises, Inc., and Terminal Furniture, Radio and Appliance Co., Inc., the companies alleged to have profited by the misconduct, are joined as defendants.

A detailed answer was filed by Wilcox-Gay which was adopted by the other defendants. In general, it denies the charges.

On June 9, 1953, plaintiffs asked leave to file an amendment to the complaint. The amendment merely alleges that the plaintiff Rosenberg, instead of owning 500 shares, actually owns 250 shares, and that the other 250 shares are owned by one Walter Spritz, with an explanation as to why it was originally alleged that Rosenberg owned all the shares. The defendants opposed the filing of the amendment and the matter was continued by the Court to be taken up with the other pending motions.

On March 13, 1953, Judge LaBuy entered an order under the title "In the Matter of Wilcox-Gay Corporation and Leonard Ashbach" on motion of I. Harvey Levinson, attorney for said parties, for the suppression of the instant suit if and when filed. There was no suit pending at the time and no number was assigned to the proceeding. The motion was supported by an affidavit of Ashbach setting forth that the attorneys for the plaintiff had exhibited a copy of the intended complaint with the names of the plaintiffs omitted and that the suit, if filed, would prejudice the credit and standing of Wilcox-Gay and Ashbach. The affidavit fully supports the entry of the order if the court had jurisdiction at that time.

The order directs that the Clerk of the court "impound, suppress and seal" the complaint and other papers in the cause "until all the defendants shall have filed their defensive proceedings, the court shall have determined whether or not the said complaint has been filed in good faith and until the further order of the court."

The order further directs that "neither" of the parties or their agents and attorneys shall give any publicity or currency to any of the allegations contained in the pleadings until the further order of court.

The following motions are pending:

A. A motion by the plaintiffs to amend the complaint.

**136**

B. A motion to strike certain defenses alleging approval by the plaintiffs of the misconduct complained of and laches and estoppel.

C. A petition to vacate the order of Judge LaBuy suppressing the case. The petition is verified and sets forth as grounds for the vacation the following points:

1. The order is void.

2. The effect of the order is to prevent the plaintiffs from taking depositions.

3. The defendant Leonard Ashbach has avoided service of summons and was finally served by leaving a copy at his residence. No facts are alleged to support this allegation of evasion.

4. The defendant Ashbach through various intermediaries has attempted to persuade the plaintiffs to abandon the suit through "threats and intimidations." No facts are alleged.

D. A motion to forbid the defendants from taking the depositions of the plaintiffs and their accountant. An affidavit in support of this motion was filed setting forth, without detail, that Ashbach attempted to intimidate the plaintiffs into foregoing the action, that the examination "will not divulge any legal or equitable defenses" and that the depositions were undertaken to harass the plaintiffs. No supporting facts or detail whatsoever are set forth.

■ The defendants' brief argues that the complaint must be dismissed because primary acts of misconduct occurred prior to the time the plaintiffs acquired their stock. This contention, however, will receive only incidental consideration for the following reasons:

(a) There are acts of misconduct alleged after the acquisition of the plaintiffs' stock; for example, the excessive salaries paid the officers of Wilcox-Gay and the continuing practice of favoring the other Ashbach companies with the sale of merchandise below its value. While these charges are only in the most

general terms, the question has not been specifically raised as to whether they satisfy Rule 8 governing pleadings.

(b) The issue is not included in the pending motions and is not, therefore, argued in the plaintiffs' brief. The plaintiffs' reply brief points out this fact.

*The motion to file an amendment to the complaint*

■ No reason is evident why the motion should be denied. The defendants resist the filing of the motion, citing Lissauer v. Bertles, D.C., 37 F.Supp. 881, 884, but the facts are entirely different from the case at bar. There the court, as a condition to permitting an amended complaint to be filed in a stockholder's suit, required an affidavit to be filed establishing that the suit was filed in good faith. This question had been raised in some unspecified way. In the instant case the amendment merely goes to the number of shares of stock owned by one of the plaintiffs. Leave, therefore, is granted to the plaintiffs to file an amendment to the complaint.

*The motion to strike certain defenses*

The motion is to strike the first and the third to the sixth defenses, inclusive. The substance of these defenses is:

1. The complaint fails to state a claim.

3. The acts complained of occurring prior to April 10, 1951, were approved at a regularly called shareholders' meeting on that date by unanimous action of the shareholders present. Rosenberg, the only plaintiff who held stock on that date, received notice of the meeting, together with a copy of the annual report for the year 1950. The merger with Majestic is described at length in this report.

4. An annual meeting of Wilcox-Gay was held on April 15, 1952, pursuant to notice to each of the plaintiffs, with which was included the annual report for 1951. The plaintiff Birnbaum was

represented by Charles Hirsch as proxy at that meeting. The annual report disclosed an indebtedness due from an affiliated company. The shareholders unanimously approved the annual report which included Birnbaum through his proxy.

5. A registration statement was filed with the Securities and Exchange Commission pursuant to which the prospectus attached as Exhibit C dated December 20, 1950, was issued. The prospectus contains complete financial information. In reliance on the prospectus the plaintiffs acquired their stock.

6. The plaintiffs are not entitled to judgment.

■ While not controlling, the attitude of the federal courts on stockholders' derivative actions is an important element in the disposition of the instant case. Rule 23(b) of the Rules of Civil Procedure provides, 28 U.S.C.A.:

"Secondary Action by Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

The suspicion with which courts regard stockholders' actions was expressed as early as 1884 in Dimpfel v. Ohio & Mississippi R. Co., 110 U.S. 209, 3 S.Ct. 573, 28 L.Ed. 121. In an action by two stockholders of a railway who held 1,500 shares out of 240,000, Mr. Justice Field said:

"The owners of the balance of this large number make no complaint of the transactions which the complainants seek to annul. And it does not appear that the complainants owned their shares when these transactions took place. For aught we can see to the contrary, they may have purchased the shares long afterwards, expressly to annoy and vex the company, in the hope that they might thereby extort, from its fears, a larger benefit than the other stockholders have received or may reasonably expect from the purchase, or compel the company to buy their shares at prices above the market value. Unfortunately, litigation against large companies is often instituted by individual stockholders from no higher motive.

\* \* \* \* \* \*

"A stockholder must make a better showing of wrongs which he has suffered, and also of efforts to obtain relief against them, before a court of equity will interfere and set aside the transactions of a railway company or of its directors. It is not enough that there may be a doubt as to the authority of the directors or as to the wisdom of their proceedings. Grievances, real and substantial, must exist, and before an individual stockholder can be heard he must show, in the language of this court, that 'he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances or action in conformity to his wishes.' Hawes v. [City of] Oakland, 104 U.S. 450 [26 L.Ed. 827].'"

No valid reason is given why the first and sixth defenses should be stricken. The third, fourth and fifth defenses are relevant, first in reflecting on the motive which prompted the litigation, and secondly in presenting a basis for urging estoppel, acquiescence or laches.

The plaintiffs attack these defenses by citing a number of rules and judicial pronouncements without definitely articulating the legal principles with the specific facts alleged in the answer. For example, it is asserted that a void as distinguished from a voidable act is not subject to ratification, citing McKey v. Swenson, 232 Mich. 505, 205 N.W. 583. The case is not in point. It merely holds that a trustee for a corporation under a common-law assignment has power to recover unlawful salaries. The plaintiffs go on to cite the case of Murray v. Smith, 1915, 166 App.Div. 528, 152 N.Y.S. 102, 109, to the effect that the defense of acquiescence is not available where the corporate wrong was in violation of a statute and thus "was *malum prohibitum*". The rule expressed by the New York court would hardly be applicable here even if it is correct as an abstract statement. For example, the court distinguished between the defense of acquiescence or ratification and the defenses of laches and estoppel.

The plaintiffs also urge that the defenses of laches, ratification and estoppel are not available to the corporation in this type of action, but only to the individual wrongdoers, and cite Daniel v. Briggs, 279 Mass. 87, 180 N.E. 717, 719, where in a stockholder's action the court said:

"The real beneficiary of this proceeding is the corporation. As against it there is no merit in the defense of laches."

That remark was made in apposition to the wrongdoer's contention that there was laches in the bringing of the action. The situation in the instant case is different. Here the corporation makes the defense, but the plaintiffs respond that the corporation has no interest in making such a defense. This is not a sound assumption. If the action is not brought in good faith or with a substantially meritorious claim, why should the corporation be subjected to the expense of defending the action and the injury to its repute which will result from unsubstantiated charges against its management. Cohen v. Beneficial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528.

The charges in the complaint are so general and lacking in detail and circumstance that it would be unfair *in limine* and before the evidence is in to rule out the defenses presently under consideration.

The motion to strike the indicated portions of the answer is denied.

*The petition to vacate the impounding order*

The defendant Wilcox-Gay filed an answer to the petition to vacate the impounding order which includes a prayer that the Court now enter an order extending and continuing in effect Judge LaBuy's order. The answer is not under oath. Attention should be called to a copy of a letter from Wilcox-Gay's counsel to the attorneys for the plaintiffs, attached to the answer. This letter states that plaintiffs' attorneys exhibited to the defendants' counsel a copy of the proposed complaint in which the names of the plaintiffs were deleted. The letter summarizes the explanations given by the defendants' counsel to the plaintiffs for the sundry charges made in the complaint and repeats an offer made by the defendants to make the pertinent records available for inspection if the plaintiffs' counsel would disclose the names of their clients and show that such clients were entitled to the information. This offer was properly conditioned according to law. There is no reason why a disclosure should be made to counsel representing an undisclosed client.

The plaintiffs attack Judge LaBuy's jurisdiction on the following grounds:

(a) District Courts have only such jurisdiction as is conferred upon them by statute; and

(b) District Courts only have power to enter orders in pending lawsuits commenced in accordance with the law and in which there is a justiciable issue between adversary parties.

This position is not denied by the defendants. The defendants seek to sustain the order on the ground that it is an administrative act involving the control of the Court over its Clerk.

The order entered by Judge LaBuy divides itself into two parts: The first part directs the Clerk to suppress the case when and if filed, and the second orders that the parties, their agents and attorneys, shall give no publicity to the allegations in the pleadings. No cases have been cited which are directly in point, and therefore the question will have to be resolved deductively from established principles. The established principles which control the issue are as follows:

■ 1. The records of proceedings of a court are not required to be open to public inspection until after the trial. Rule 77(b) of the Rules of Civil Procedure states:

"Trials and Hearings; Orders in Chambers. All trials upon the merits shall be conducted in open court and so far as convenient in a regular court room. All other acts or proceedings may be done or conducted by a judge in chambers, without the attendance of the clerk or other court officials and at any place either within or without the district; but no hearing, other than one ex parte, shall be conducted outside the district without the consent of all parties affected thereby."

Rule 30(b) recognizes this principle in its provisions authorizing the suppression and sealing of information and documents in connection with the taking of depositions. The rule has also been recognized by the court in Sanford v. Boston Herald Traveler Corp., 318 Mass. 156, 61 N.E.2d 5, 6, where the court held that the Massachusetts statute making public records open to public inspection was not applicable to the files of a court, saying:

"It is within the discretion of a court to impound its files in a case and to deny public inspection of them, and that is often done when justice so requires."

In 45 Am.Jur. 430, Sec. 21, it is said:

"Every court of record has a supervisory and protecting charge over its records and the papers belonging to its files and, therefore, in the absence of controlling statute there can be no duobt as to the power of a court to prevent an improper use of its records."

See also notes in 175 A.L.R. 1266.

■ 2. Under fundamental and universally recognized principles, including the due process amendment, a court has no power to issue an order obligatory on a person except in a duly instituted adversary proceeding pending before the court. Such an order may only be issued without notice to the affected party or some one representative of him in extraordinary circumstances and for a temporary duration.

■ 3. A court of equity will not, except in special circumstances, issue an injunctive order restraining libel or slander or otherwise restricting free speech and in many cases it will not do so even where a property right is affected through spoken or written words except to restrain repeated wrongs after the plaintiff's right has been established in an action at law. In Montgomery Ward & Co. v. United Employees, 400 Ill. 38, 42, 79 N.E.2d 46, 48, the court said:

"The first general principle is that equity does not have jurisdic-

tion to enjoin the commission of crimes and libels; and the second general principle is that the constitutional guaranty of free speech as a general rule prohibits both the courts and the legislature from putting previous restraints on publications. That there are exceptions to these general principles is recognized, but the plaintiff in bringing its suit for such relief must take upon itself the burden of showing facts which bring it within these exceptions.

"The rule long in force was that in the absence of the showing of a violation of some property right, or some breach of trust or of a contract, an injunction was not available to prevent actual or threatened publications of a defamatory character."

The court refers to Flint v. Hutchinson Smoke Burner Co., 110 Mo. 492, 19 S.W. 804, 16 L.R.A. 243, where it was held that an injunction would not be issued against the slander of title to a patent by false statements made to the plaintiff's prospective customers, "because the jurisdiction of a court of equity does not apply to cases of libel or slander, and in such case it is required that the libel or slander be first established by a court of law, * * *." The court then quotes from the opinion in the Flint case to the following effect, 110 Mo. 492, 19 S.W. 804, 16 L.R.A. at page 243:

" 'We live under a written constitution which declares that the right of trial by jury shall remain inviolate, and the question of libel or no libel, slander or no slander, is one for a jury to determine. Such was certainly the settled law when the various constitutions of this state were adopted, and it is all-important that the right thus guarded shall not be disturbed. It goes hand in hand with the liberty of the press and free speech.' "

See also Otis & Co. v. National Association of Securities Dealers, D.C.D.C., 1949, 84 F.Supp. 395, 399.

■ Employing the above standards, the following conclusions are reasonably deducible:

(a) The administrative order of Judge LaBuy to the Clerk of the Court to suppress the case when filed was within his prerogatives and not subject to question irrespective of what initiated such action by the Court.

(b) Judge LaBuy had no jurisdiction to enter the second portion of the order directing the prospective parties to the suit to refrain from giving publicity to the contents of the pleadings.

(c) Since the suit has now been filed, it is competent for the Court to renew or confirm Judge LaBuy's direction to the Clerk to suppress the case.

(d) As an incident to the pending lawsuit, the Court has jurisdiction presently to direct the parties to refrain from publicizing the proceedings, notwithstanding the reluctance of the courts to impose restraints on free speech. If this were not so, the direction to the Clerk would be futile and ineffective. The exercise of the corollary jurisdiction over the parties is essential to make fully effective the Court's control over the proceedings pending before it.

The affidavit of Leonard Ashbach filed in support of Judge LaBuy's original action gives strong and convincing factual impetus to the renewal of Judge LaBuy's order in both its aspects. This is particularly true in view of the general atmosphere of the case and the fact that nothing has been presented in opposition other than vague generalities.

The plaintiffs argue that the order suppressing the case prevents the plaintiffs from taking depositions. If the plaintiffs have any doubt on this subject, they could apply to the Court for permission to take depositions, which the Court would undoubtedly allow,

since it is obvious that such restrictive effect was not intended by the order. The point is so superficial that it merits no further comment.

### The motion to forbid the taking of depositions

 The plaintiffs have moved for an order to countermand the taking of depositions by the defendants. The supporting affidavit, above referred to, contains nothing of legal or factual substance. Rule 30(b) provides in part as follows:

> "After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, * * *."

The short answer to the plaintiffs' motion is that no cause whatsoever has been shown why the deposition should not be taken. Aside from this, the circumstances of the case strongly favor liberality in granting the right of inquisition. Among other circumstances, the following might be listed:

1. The complaint contains only vague generalities.

2. Although adversary counsel conferred on the case prior to its institution, plaintiffs' attorneys failed to disclose the identity of their clients prior to the filing of the suit.

3. There is no reason to believe that access to the defendants' records would have been denied the plaintiffs prior to the institution of the suit had their identity been disclosed and their right as stockholders to make inquiry been established.

4. Under the universal interpretation of the rules by the courts, it requires a strong showing to justify the denial to a litigant of his right of discovery.

5. If it appears at any time during the course of the depositions that the conduct of the examination is abusive or improper, the proceeding can be interrupted and the matter presented to the court in the light of the facts as they may develop.

The motion to prohibit the taking of the depositions is denied.

Counsel will please confer and submit a draft order in keeping with the views herein expressed.