FLOYD E. DOWNEY and TOMMIE HAMPTON, doing business as RELIABLE WEATHERPROOFING COMPANY, Appellants, v. UNITED WEATHERPROOFING, INC., a Corporation, V. A. WALKER and L. W. STEETLE, Respondents, No. 43057—253 S. W. (2d) 976.

Division One, January 9, 1953.

*Norman, Foulke & Warten* for appellants.

854

*Keller, Burnett & Wilbert, Bond & Bond, Ray Bond* and *John S. Bond* for respondent.

PER CURIAM.—Plaintiffs-appellants, Floyd E. Downey and Tommie Hampton, doing business as Reliable Weatherproofing Company, by their first amended petition in three counts sought the recovery of damages actual and exemplary aggregating $25,142.50, and injunctive relief.

This is a second appeal. The instant action was originally instituted against defendant United Weatherproofing, Inc., and two individual defendants. The corporate defendant, United Weatherproofing, moved separately to dismiss the petition on the ground that no count thereof stated a claim upon which relief could be granted against defendant corporation. The separate motion filed by defendant corporation was sustained, and a judgment of dismissal was entered from which judgment plaintiffs appealed. However, the transcript of the record upon the first appeal did not disclose any disposition of the cause as to the individual defendants, and this court was obliged to dismiss the appeal as premature. Downey v. United Weatherproofing, 241 S. W. 2d 1007. Thereafter, the cause was reinstated on the docket of the circuit court and the judgment of dismissal theretofore entered by that court was set aside. Plaintiffs voluntarily dismissed their case as to the individual defendants, and

the motion to dismiss originally filed by the defendant corporation was again sustained. Plaintiffs have again appealed.

The questions presented upon this appeal are whether plaintiffs' petition states claims upon which legal and equitable relief may be granted for alleged interference by defendant with plaintiffs' business and contractual relations.

In determining if a petition states a claim or cause of action, the averments of the petition are to be given a liberal construction, according the averments their reasonable and fair intendment—fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its [978] averments invoke substantive principles of law which entitle plaintiff to relief. A petition is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact. Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W. 2d 52; Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo. Sup., 246 S.W. 2d 742; Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W. 2d 25; Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W. 2d 601; Section 509.250 RSMo 1949, V.A.M.S.

Plaintiffs in their first amended petition allege that they were individuals engaged in the weatherproofing business at Joplin, and that, on April 20, 1950, plaintiffs entered into an agreement in writing with one Elmer Hupperfelt whereby plaintiffs agreed to furnish insulation material and install the same in a house owned by Hupperfelt. Plaintiffs further allege,

"5. On May 3, 1950, defendants with full knowledge of the aforesaid contract existing between plaintiffs and the said Elmer Hupperfelt, and intending to harass, annoy, persecute, injure, destroy and otherwise interfere with the due prosecution of plaintiffs' business, did wrongfully, fraudulently, knowingly, intentionally and maliciously persuade and procure the said Elmer Hupperfelt to repudiate and cancel the said contract made as aforesaid with plaintiffs and induced him to enter into a contract with defendant United Weatherproofing, Inc., whereby defendant United Weatherproofing, Inc., installed insulating material in his house.

"6. Defendants persuaded and procured the said Elmer Hupperfelt to repudiate and cancel his said contract with plaintiffs by the use of false, malicious and fraudulent representations, some of which were to the general tenor and effect that plaintiffs were unreliable, insolvent and unable to furnish the goods and services contracted for, and by agreeing in writing to protect and indemnify the said Elmer Hupperfelt against any and all liability he might incur by reason of the breach of said contract he had theretofore entered into with plaintiffs, which said written agreement to indemnify is in words and figures as follows - - -.

"7. The said Elmer Hupperfelt would not have breached the contract made as aforesaid with plaintiffs, but for the wrongful conduct of defendants as aforesaid."

The first count continues in alleging plaintiffs' damages and prayed for judgment therefor.

In the second and third counts of their petition plaintiffs allege as follows,

"For another and further cause of action against defendants, plaintiffs adopt Paragraphs 1, 2 and 3 of Count One of this first amended petition, and make the same a part hereof, as though fully set out at length.

"1. Defendants, their servants and agents, intending to harass, annoy, persecute, injure, destroy, and otherwise interfere with the due prosecution of plaintiffs' business, did (and still do) induce, procure, persuade and entice plaintiffs' customers to have no business relations or transactions with the plaintiffs; and defendants, their servants and agents, have gone out into localities wherein plaintiffs had an active business and were actively engaged in the prosecution of their business, and there among the public at large and plaintiffs' prospective customers and those under contract with the plaintiffs, did procure, persuade and induce the public at large and plaintiffs' customers to refrain from doing business with the plaintiffs, and defendants, their servants and agents have procured, induced, sought and persuaded plaintiffs' customers, who had heretofore had business relations with plaintiffs, to break their contract(s), and refuse to further treat with plaintiffs as required by the various contracts had with various customers of the plaintiffs.

"2. Defendants, their servants and agents, when attempting to persuade, [979] induce and procure plaintiffs' customers to cease business relations with plaintiffs, and plaintiffs' prospective customers to refuse to treat with plaintiffs, made false, fraudulent and malicious representations to plaintiffs' customers and prospective customers, some of which were to the general tenor and effect that plaintiffs were unreliable, insolvent and unable to furnish the goods and services contracted for; and defendants, their servants and agents, would offer to enter into an agreement with plaintiffs' customers to protect and indemnify said customers against any and all liability they might incur if said customers would break their contract(s) with plaintiffs.

"3. As a direct result of the unlawful, malicious, wrongful and fraudulent conduct on the part of defendants, their servants and agents, plaintiffs' business has been injured in the sum of Five Thousand Dollars.

"4. Plaintiffs are engaged in a lawful undertaking and are entitled to lawfully and peacefully prosecute and pursue their

business, and to be protected in their business, property and property rights, and these plaintiffs charge that the acts of defendants, their servants and agents, constitute unwarranted and malicious interference with the due prosecution of plaintiffs' business and is a trespass and injury to the property rights and business of the plaintiffs.

"5. The actions of the defendants, their servants and agents, were and are prompted by malice, and all acts charged herein were done maliciously, fraudulently and without legal justification or excuse.

"WHEREFORE, plaintiffs pray judgment against defendants - - -.

"For another and further cause of action against defendants, plaintiffs (in their third count) adopt Paragraphs 1, 2, 3, 4, 5, 6 and 7 of Count One of this first amended petition, and make the same a part hereof, as though fully set out at length.

"1. In addition to the above and foregoing unlawful interference with plaintiffs' business, defendants are threatening to and will attempt to continue similar unlawful interference with plaintiffs' business unless enjoined and restrained by this Court. Defendants are threatening to use 'all the means at their command', and are attempting to wrongfully, unlawfully and maliciously induce and persuade plaintiffs' customers not to continue their business relations with plaintiffs, and to induce and persuade plaintiffs' customers to cancel and breach contracts which they have entered into with plaintiffs, by offering to protect and indemnify said customers from any and all liability which they might incur by reason of the breach of said contracts, and by the use of false and fraudulent representations, some of which are to the general tenor and effect that plaintiffs are unreliable, insolvent and cannot furnish goods and services contracted for; all for the avowed purpose of preventing plaintiffs from pursuing a lawful business, and of depriving plaintiffs of the benefits of contracts which plaintiffs have negotiated with their customers.

"2. Plaintiffs have no adequate remedy at law, and unless defendants are enjoined and restrained from doing, or attempting to do, the acts above numerated, plaintiffs will suffer irreparable injury.

"WHEREFORE, Premises considered, plaintiffs pray that the Court make and enter its order herein, permanently enjoining and restraining the defendants, and each of them, their servants, agents and employees from sending, conveying or delivering in any way to any person, firm or corporation or association, any notice, verbal or otherwise, upon or against the plaintiffs or their goods, merchandise or service, and from, in any way, menacing,

hindering or obstructing the plaintiffs, by interfering with their patronage, business or customers, and from in any way impeding the plaintiffs from [980] the fullest enjoyment of all the patronage, business and customers which they may possess, enjoy or acquire, and from interfering with plaintiffs or their business with threats and representations to customers, or prospective customers of plaintiffs, that plaintiffs are insolvent and cannot furnish goods and services contracted for; and from persuading or inducing, or from attempting to persuade and induce plaintiffs' customers to breach or cancel their contracts made with plaintiffs, upon the promise and representation that defendants will indemnify and hold said customers harmless from any and all liability incurred as to contracts made with plaintiffs; and for such other and further relief as may be meet and just.''

In our opinion the petition and each count thereof states essential elements of claims which, if supported by the greater weight of the evidence, would entitle plaintiffs in some measure to the relief they seek.

■ It has now come to be the view of a majority of courts in this country that one who maliciously or without justifiable cause induces a person to breach his contract with another may be held responsible to the latter for the damages resulting from such breach. The term ''maliciously'' in this connection alludes to malice in its technical legal sense, that is, the intentional doing of a harmful act without justification or excuse, and does not necessarily include actual malice, that is, malice in the sense of spite or ill will.

The right to perform a contract and to reap the profits therefrom, and the right to performance by the other party, are property rights entitling each party to the fulfillment of the contract by performance. And the intentional interference with the contractual relation without just cause so as to effect a breach of the contract is a wrong for which the wrongdoer may be held accountable in damages. The right of recovery for inducing a breach of a contract is but one instance of the protection which the law affords against unjustified interference in business relations. An existing contract may be a basis for greater protection, but some protection is appropriate against unjustified interference with reasonable expectancies of commercial relations even where an existing contract is lacking. The unjustifiable character of the alleged wrongdoer's conduct and the harm caused thereby may be equally clear in both instances, but the differentiation between them relates to the scope of the privileges, or the kind and amount of interference that is justifiable in view of the differences in the facts. Restatement, Torts § 766; Annotations, 84 A.L.R. 43 and 9 A.L.R. 2d 228; Vol. 2, Cooley on Torts, 4th Ed., § 227, pp. 184-185, and § 230, pp. 196-198. See also Rosen v. Alside, Inc., Mo. Sup., 248 S.W. 2d 638; Church Shoe Co. v. Turner, 218 Mo. App. 516, 279 S.W. 232.

■ In the instant case the plaintiffs state in the first count of their petition that defendant, with full knowledge of the stated existing contract between plaintiffs and another, did intentionally persuade and procure the repudiation and cancellation of the contract. And in the first count plaintiffs further state that the cancellation or breach of the contract was by the use or by the means of false and fraudulent representations and by an agreement to indemnify against liability on the other to plaintiffs. In the allegation of the use of fraud in inducing the breach of the contract, the first count is sufficient in stating a claim for relief in damages even as required by this court's opinion in Glencoe Sand & Gravel Co. v. Hudson Bros. Commission Co., 138 Mo. 439, 40 S.W. 93, cited by defendant-respondent. We also make reference to the allegation of the use by defendant of promises to indemnify plaintiffs' customers against liability for the breach of their contracts with plaintiffs. Compare Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co., C.C. Ala., 171 F. 553. But the language of the Glencoe case and, it would seem, some of the language in the Power Company case to the effect that actionable wrong is committed not by mere persuasion but only where breach of an [981] existing contract is induced by means of fraud, deceit or coercion is out of harmony with the majority view as stated supra. We believe the allegation and proof of the use of fraud, deceit or coercion as a means of inducing a breach of an existing contract should be considered non-essential to a recovery for inducing the breach of an existing contract, if, as stated supra, there is alleged (and demonstrated) that the alleged wrongdoer maliciously, that is, with knowledge of the contract and without justifiable cause, induced the breach. In re-examining the opinion of this court in the case of Glencoe Sand & Gravel Co. v. Hudson Bros. Commission Co., supra, it will be noted that this court adhered to the dissenting opinion of Coleridge, J., in the case of Lumley v. Gye (1853), 2 El. & Bl. 216, 118 Eng. Reprint 749, in which Coleridge, J., arrived at the conclusion, "Merely to induce or procure a free contracting party to break his covenant, whether done maliciously or not, to the damage of another - - - is not actionable." 118 Eng. Reprint, at page 768. Desiring now to follow the majority view, we now embrace generally the conclusion of the majority opinion in Lumley v. Gye, which was that an action will lie for the malicious procurement of the breach of any contract (even though not for personal services). See now Temperton v. Russell (1893), 1 Q.B. 715; Annotation, 84 A.L.R. 43 at pages 69-74. And our change of view has been brought about by our present belief that rights of the parties to an existing contract are of such importance in the business world that such rights should be protected from intentional and unjustifiable interference by a third person.

Of course, it is express or at least implicit in the majority rule that the inducement of the breach of an existing contract may be justified.

In the instant case, we may readily infer from the allegations of the petition that the parties, plaintiffs and defendant, are competitors as suppliers of weatherproofing materials. However, the fact in itself that defendant is a competitor of plaintiffs would not justify defendant's malicious interference and inducement of the breach of the alleged existing contract. Restatement, Torts § 768. As stated, the right of a party to a contract to reap the profits resulting from the performance and the right to performance by the other party have been expressly declared to be property rights entitling each party to the other's performance, and, while the right of free competition in business is recognized as the right of every citizen, the right to the performance of an existing contract is a right to rely upon another's present commitment and consequently one of greater expectancy than is the right to enter into future contracts even in a competitive field. So the right of free competition alone, as stated, should be considered of less import and should be less highly protected in law than the right under a contract already entered into. See again Restatement, Torts § 768; and see also Carpenter, Interference with Contract Relations, 41 H.L.R. 728, at page 747.

█ The second and third counts of the petition respectively state claims for relief in damages and by injunction. In examining the sufficiency of the claim as stated in the first count of the petition we have treated with the alleged instance of the malicious procurance of the breach of an existing contract. Examining counts two and three— we must treat with the allegations not only that defendant has induced but that defendant purposes to continue to induce the breach of existing contracts, and that defendant has induced and continues in his purpose to induce third persons not to enter into contracts and to discontinue and refrain from doing business with plaintiffs—all with the malicious intent to injure and destroy plaintiffs' business by means of false and fraudulent representations and by offers to indemnify for breach of contracts with plaintiffs, and all to the injury of plaintiffs' property rights and business.

"- - - one man singly, nor any number of men jointly, having no legitimate interests to protect, may not lawfully ruin the business of another by maliciously inducing his patrons and third parties not to deal with him." Ertz v. Produce Exchange of Minneapolis, 79 Minn. 140, 81 N.W. [982] 737; Vol. 2, Cooley on Torts, 4th Ed., § 230, pp. 196-198. It has been written that a "citizen's right to pursue any business, calling, or profession he may choose is a property right to be guarded by equity as zealously as any other form of property. Not every act, of course, which injures another's business will give rise to a cause of action for injunction, irrespective of the availability of legal relief; yet, in a proper case, the remedy will be granted to protect such property right against irreparable injury resulting

from the tortious or wrongful acts of others." 28 Am. Jur., Injunctions, § 124, p. 315.

In our case we have inferred defendant was engaged in business in competition with plaintiffs. As a competitor, defendant also had the property right and privilege of engaging in its competitive business and was justified by its privilege as a competitor in using lawful means in soliciting and procuring business even though its lawful conduct in procuring business had the effect of causing customers to refrain from doing business with the competitors-plaintiffs. Here actual malice, as well as the purpose or intent and the nature of the conduct of a defendant, seems to be relevant; and the exploitation of the competitive market should be with lawful means and with the intent, at least in part, to further the alleged wrongdoer's business in the competitive field. If the alleged wrongdoer's conduct is directed solely to the satisfaction of spite or ill will and not in the advancement of his competitive interests over his competitor, the person harmed, he is not exercising and is not entitled to invoke his privileges as a competitor. Restatement, Torts, § 768.

The allegation of fact, that defendant is attempting to induce plaintiff's customers to breach their existing contracts by offering to indemnify such customers against liability for the breach, states conduct which is wrongful inasmuch as the alleged conduct is an unjustifiable attempt to destroy plaintiff's property right in existing contracts; and if the fact were established by evidence and if shown to be continuing, such conduct may be enjoined. See and compare Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co., supra. However, we believe the prayer for relief in the third count too broadly asks for an order restraining defendant from "sending, conveying or delivering in any way to any person, firm or corporation or association, any notice, verbal or otherwise, upon or against the plaintiffs or their goods, merchandise or service, and from, in any way, menacing, hindering or obstructing the plaintiffs, by interfering with their patronage, business or customers, and from in any way impeding the plaintiffs from the fullest enjoyment of all the patronage, business and customers which they may possess, enjoy or acquire - - - ." The quoted language, if incorporated in a decree, would erroneously include an injunctive restriction of some of the means which a competitor may properly employ. " - - - it is thought that the social interest in competition would be unduly prejudiced if one were to be prohibited from in any manner persuading a competitor's prospective customers not to deal with him. On the other hand, both social and private interests concur in the determination that persuasion only by proper means is permissible, that predatory means like violence and fraud are neither necessary nor desirable incidents of competition." Comment on Clause (e) § 767, Restatements, Torts, p. 70.

Relating to the prayer for injunctive relief specifically as against the alleged false and fraudulent representations—defendant-respondent (citing Ryan v. City of Warrensburg, 342 Mo. 761, 117 S.W. 2d 303; Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S.W. 391; and Flint v. Hutchinson Smoke Burner Co., 110 Mo. 492, 19 S.W. 804) contends the alleged false and fraudulent representations are defamatory and redress for defamation is to be restricted to an action at law for damages. This contention requires a further and more careful examination of the allegations of the third count of the petition with [983] the view of correctly determining the gist of the wrong against the continuance of which plaintiffs seek a restraining order.

Some of the false and fraudulent representations allegedly used by defendant as a means of inducing or attempting to induce customers to breach their contracts and to refrain from doing business with plaintiffs are stated as being to the general tenor and effect that plaintiffs are unreliable, insolvent, and unable to furnish the goods and services contracted for. The stated general effect of these alleged representations is indeed defamatory in nature. The alleged representations go to plaintiffs' solvency and are such as would tend to injure plaintiffs' business reputation and business. 53 C.J.S., Libel and Slander, § 43, p. 93. However, something more than the incidence of loss of business has been held to be essential in invoking injunctive relief against defamatory statements. Flint v. Hutchinson Smoke Burner Co., supra. In this connection, it may be observed that the alleged false statements (of a defamatory nature) would also tend to intimidate and induce customers to breach existing contracts, and to discourage prospective customers from doing business or entering into future contracts with plaintiffs.

Constitutional provisions insuring free speech (and freedom of the press) and the right of trial by jury have been held to be insurmountable to the granting of an injunction as against the further utterance (or publication) of alleged defamatory statements absent some other ground for equitable relief such as breach of trust, coercion, conspiracy, or a willful, malicious, continuing and irreparable injury to a property right (Consumers' Gas Co. of Kansas City v. Kansas City Gaslight & Coke Co., 100 Mo. 501, 13 S.W. 874; Flint v. Hutchinson Smoke Burner Co., supra; Marx & Haas Jeans Clothing Co. v. Watson, supra; Ryan v. City of Warrensburg, supra; Annotation, Injunction as Remedy in Case of Trade Libel, 148 A.L.R. 853, at pages 854-860; 28 Am. Jur., Injunctions, §§ 118-119, pp. 311-313), at least prior to a verdict and judgment for a plaintiff upon the issue of the falsity of the statements. Wolf v. Harris, 267 Mo. 405, 184 S.W. 1139; Flint v. Hutchinson Smoke Burner Co., supra.

But in our case, although the stated false representations are of a defamatory character, they are not alleged as such as the basis for injunctive relief. They are alleged as a means by which defendant was attempting to accomplish another continuing wrong from which plaintiffs seek relief.

The petition does not purport to state a claim upon defamation. It is alleged that defendant had induced and is continuing in attempting to induce customers to refrain from doing business with plaintiffs and to induce plaintiffs' customers to cancel their contracts by offering to indemnify the customers against liability and by the use of stated false and fraudulent representations, all with the wrongful, unlawful and malicious purpose of preventing plaintiffs' pursuit of their lawful business and of depriving plaintiffs of the benefit of their existing contracts to plaintiffs' irreparable injury. We think it must be conceded that the gist or gravamen of plaintiffs' claim as alleged is for relief against the continuing violation of their property rights—their right to pursue their business and their right to reap the profits from existing contracts. If we have correctly determined the gist of the claim, the restraint of the alleged false representations instrumental in continued violations would be but affording plaintiffs full and complete relief in the preservation of their business and contractual rights and interests.

We are of the opinion that plaintiffs have stated a claim for the equitable relief of an injunction. And, while we believe a court should exercise the power to enjoin a spoken or printed word with great caution, we are constrained to the view that, in the instant case, if the allegations of fact as stated in the third count of plaintiffs' petition are established by proof, constitutional provisions insuring free speech and trial by jury may be correctly considered inapplicable. American Malting Co. v. Keitel, 2 Cir., 209 F. 351, id., D.C. 217 [984] F. 672; Menard v. Houle, 298 Mass. 546, 11 N. E. 2d 436; Grand Rapids School Furniture Co. v. Haney School Furniture Co., 92 Mich. 558, 52 N.W. 1009; Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690; cases collated in Annotation, 148 A.L.R., supra, at pages 860-866, and in Annotation, 175 A.L.R. 438 at pages 499-502; 43 C.J.S., Injunctions, § 135, pp. 680-681; 28 Am. Jur., supra, § 119, pp. 311-312, and § 124, pp. 315-317; Vol. 4, Pomeroy's Equity of Jurisprudence, 5th Ed., § 1358, pp. 968-969.

The judgment of dismissal should be reversed, and the cause remanded.

It is so ordered.

All of the judges concur, except *Conkling, J.*, who concurs in result only.