**GERSTNER ELECTRIC, INC.,**
**Appellant,**

v.

**AMERICAN INSURANCE**
**COMPANY, Appellee.**

No. 74–2001.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1975.

Decided Aug. 8, 1975.

Rehearing and Rehearing En Banc
Denied Sept. 8, 1975.

Ralph Edwards, Jerry D. Perryman, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., for appellant.

Joseph L. Leritz, Bernard A. Reinert, Kenney, Leritz & Reinert, St. Louis, Mo., for appellee.

Before BRIGHT, Circuit Judge, KILKENNY, Senior Circuit Judge,* and HENLEY, Circuit Judge.

KILKENNY, Circuit Judge.

Appellant Gerstner appeals from the district court's judgment of dismissal notwithstanding a jury verdict and asks for alternative relief which we need not consider. The verdict in favor of appellant, including compensatory and punitive damages, was substantial. We affirm.

## FACTS

On September 7, 1971, appellant entered into a Contract Agreement (Contract) with the Missouri State Highway Commission under which appellant agreed to furnish, at its own expense, all labor, materials and equipment required in the proposed construction of a sector of Route 61 in Lincoln County, Missouri, according to the plans and specifications of the highway project. As part of the Contract, Gerstner agreed to and did furnish to the Highway Commission a Contract Bond (Bond) with the appellee as surety. Under the terms of the Bond, appellant and appellee were firmly bound unto the State of Missouri in the penal sum of $2,067,853.90, to secure faithful performance of the Contract. The Bond provided, among other things, that it would be and remain in full force and effect unless appellant properly and promptly completed the work in accordance with the provisions of the Contract, and its plans and specifications. Appellant agreed to furnish all the labor and materials required by the Contract and to " * * * pay for all materials, lubricants, fuels, coal and coke, repairs on machinery, groceries and foodstuff, equipment and tools consumed or used in connection with the construction of such

* The Honorable John F. Kilkenny, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

work, * * * and for all labor performed in said work, *whether by subcontractor* or claimant in person, or by employee, agent, servant, bailee or bailor * * *." [Emphasis added.]

Prior to the award of the contract to appellant, it and others signed an indemnity agreement by which they agreed to indemnify appellee as surety against any liability, loss, damages, and expenses which it might sustain by reason of having thereafter executed any Bond. The indemnity agreement contained provisions (1) authorizing appellee, in the event of any failure to pay for labor and materials used in the prosecution of the Contract, to "take any action it might deem appropriate," and (2) in the event of such failure, assigning as collateral security (effective as of the date of such Bond) all rights of the indemnitors under the Contract referred to in the Bond, and all sums due or which might thereafter become due under such Contract.

Appellant subcontracted the asphalt work to B & K Construction Company for an amount in excess of $779,000.00. Under the subcontract, B & K was required to pay for all labor, materials and equipment. Appellant received periodic payments from the Highway Commission based on engineers' pay estimates furnished to the Commission and on the amount of work completed and accepted by the Commission engineers subsequent to the last estimate. These estimates included work done by appellant and by all subcontractors, including B & K.

Appellant and B & K were in continuous conflict over charges and arrearages from a time shortly after the commencement of the work. Appellant had been withholding substantial payments from B & K for labor performed and materials used by the latter in the performance of its subcontract. Appellee first acquired knowledge of the dispute and B & K's claim thereon in mid-September, 1973, by a phone call from it to Donk, a bond claim manager for appellee. Shortly thereafter, Donk contacted appellant by phone and received further information on B & K's claim and appellant's

counterclaim for back charges. Appellant's president told Donk that payment would be withheld from B & K to the extent of its claim for arrearages of $207,000.00.

In mid-September, the Highway Commission paid appellant $49,151.51 under an estimate. Of that amount, $42,523.00 was for work and labor performed and materials furnished by B & K. No part of this sum was paid by appellant to B & K.

Being greatly concerned over the possibility of B & K making a direct claim against appellant under the terms and requirements of the Bond, Donk sent a telegram to the Highway Commission requesting and directing it to withhold further payments to appellant. He then spoke to counsel for the Highway Commission and advised him of B & K's unpaid claim for labor and materials. After reviewing the Contract, the Bond contract, and a copy of the indemnity agreement, the Commission counsel advised the Commission to withhold payment of any additional funds to appellant.

On October 15th, the Highway Commission issued another estimate in the sum of $67,168.51 for labor and materials furnished in connection with the construction. Of that amount, $62,773.00 was for work and labor performed and materials furnished by B & K.

Claiming back charges due, appellant continued in refusing to pay B & K for work and labor performed and materials furnished. Appellant spent, for its own purposes, the money it received from the Highway Commission based on estimates for work and labor performed and materials furnished by B & K. It is undisputed that if appellant had received the $91,000.00 withheld by the Highway Commission, it would not have paid B & K but instead would have used the money to pay its own indebtedness.

In November, 1973, B & K filed an action in the circuit court of the City of St. Louis against appellant and appellee. Under Count I, it sought $245,460.59 for work and labor performed and materials

furnished and expended under the contract with appellant. Under Count II, it sought $135,160.19 for additional work. Appellant filed a counterclaim for back charges. Appellee entered its appearance and is currently defending its interest in that suit. It is agreed that until the pending litigation in the circuit court of the City of St. Louis is terminated, the dispute between appellant and B & K will remain unresolved. At the time of the instant arguments there were approximately $230,000.00 in earned estimates held by the Highway Commission. If B & K is successful in its suit, it will receive all the money in the hands of the Highway Commission.

## ISSUE

Did the trial court err in sustaining appellee's motion and entering a judgment against appellant notwithstanding the jury verdict?

## DISCUSSION

The fundamental question before us is whether on the present record the appellee, by its action in requesting the Highway Commission to withhold progress payments to appellant which otherwise would be paid to it, did wrongfully and without justification or excuse interfere with the contractual relationship between appellant and the Highway Commission.

Briefly reviewing the Contract documents, we find that 5% of the cost of the work performed was retained by the Highway Commission and could not be released without the consent of appellee. The Bond with appellant as principal and appellee as surety, which was made part of the Contract, guaranteed, inter alia, that appellant would pay for all materials, supplies, labor and equipment required to perform the contract. Approximately one year prior to the date of the Contract, appellant and others, including Gerstner Redevelopment Corporation, executed a "general indemnity agreement" under which they agreed to indemnify appellee surety against any liability, loss damages or expenses which it

might sustain by reason of having thereafter executed any contract bond with any of the indemnitors. This agreement contained, inter alia, provisions authorizing appellee: (1) to take any action it might deem appropriate in the event of any failure to pay for labor and materials used in the prosecution of the Contract, and (2) should such failure occur, to assign as collateral security (effective as of the date of such bond) all rights of the indemnitors under the Contract referred to in the Bond, and all sums due or which might thereafter become due under such Contract.

As mentioned above, it was not until sometime in September, 1973, that appellee was informed of appellant's action in withholding payments which would otherwise be payable to B & K. When appellant informed appellee that it would continue to withhold from B & K not only the estimates, but also payments on estimates which might become due in the future, appellee sent the telegram to the Highway Commission requesting and directing that it make no further payments to appellee without its express consent. Practically all the monies payable to appellant by the Highway Commission after September were for labor and materials performed and expended by B & K. The parties have agreed that the entire amount held by the Highway Commission—including the contract balance, the 5% retention, and the withheld progress payments—totals approximately $230,000.00. Of this sum, approximately $220,000.00 covers the estimates of labor performed and materials furnished and expended by B & K.

At the outset, we agree with the district judge that it is unnecessary to rule on the sufficiency of the evidence to warrant a finding that the Highway Commission breached the Contract existing between appellant and the Commission. In this connection, we must keep in mind that B & K itself had notified the Commission that it had not been paid and would not be paid by appellant for the labor and materials. Consequently, the Commission was withhold-

ing the funds not only on the demand of appellee but also on the known fact that the principal subcontractor had not been paid. Although *First State Bank v. Reorganized School Dist. R–3, Bunker,* 495 S.W.2d 471 (Mo.App.1973), would seem to be adverse to appellant's contention, as previously mentioned, we need not reach that issue. Strongly supporting the view that the Highway Commission did not breach its Contract with appellant is *Gray v. Travelers Indemnity Co.,* 280 F.2d 549 (9th Cir. 1960). Other authorities supporting the same view are *Downey v. United Weather Proofing,* 363 Mo. 852, 253 S.W.2d 976 (1953), a case on which appellant erroneously relies; *Hahn & Clay v. A. O. Smith Corp.,* 320 F.2d 166 (5th Cir. 1963), *cert. denied,* 375 U.S. 944, 84 S.Ct. 351, 11 L.Ed.2d 274; *Zoby v. American Fidelity Co.,* 242 F.2d 76 (4th Cir. 1957); *McClellan v. Highland Sales & Investment Co.,* 484 S.W.2d 239 (Mo.1972); *Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596 (Mo.1968).

■ In its simplest terms, the question before us is whether the evidence is sufficient to sustain a finding that appellee acted without justification or excuse. The Missouri law on the subject is clear. In order to recover on its claim that appellee wrongfully interfered with its Contract by inducing its breach, appellant was compelled to prove that appellee "maliciously" (*i. e.,* with knowledge of the Contract and without justifiable cause) induced its breach. The absence of justification is an essential element of this cause of action. *Cady v. Hartford Accident & Indemnity Co.,* 439 S.W.2d 483 (Mo.1969).

■ To recover in Missouri on a claim for wrongful interference with a contract by inducing its breach, the wrongful act must be intentionally done. *Beggs v. Universal C. I. T. Credit Corp.,* 409 S.W.2d 719, 722 (Mo.1966). There must be proof that the defendant not only intended to commit an act which is ascertained to be wrongful but also that he knew it was wrongful at the time he did it. *Luhmann v. Schaefer,* 142 S.W.2d 1088, 1090 (Mo.App.1940); *Beggs v. Universal C. I. T. Credit Corp., supra.*

In the two leading Missouri cases on which appellant relies, *Downey v. United Weather Proofing, supra,* and *Coonis v. Rogers,* 429 S.W.2d 709 (Mo.1968), the defendants were guilty of acts which were beyond question malicious and without justification. In *Downey,* defendant made false and malicious representations concerning the plaintiff and without any interests of its own to protect. In *Coonis,* the defendant induced the plaintiff's customers to cancel their contracts with plaintiff, violated a court order and maliciously placed sugar in the buyer's gas tank. Such cases do not apply to the record before us.

■ While it is true that an evil intent may be implied from reckless disregard of another's rights and interests, *Pashalian v. Big-4 Chevrolet Co.,* 348 S.W.2d 628, 637 (Mo.App.1961), we find nothing in the record before us which would indicate such conduct on the part of appellee.

■ Here, it is undisputed that appellee was surety on appellant's bond, under which it guaranteed, among other things, that the subcontractors supplying labor and materials would be paid in full. Consequently, appellant was exposed to liability to B & K if these bills were not paid. Appellee had been notified of B & K's claim some time in advance of requesting the Highway Commission to withhold payment to appellant. Instead of attempting to find a solution, the appellant informed appellee that it would continue its course of conduct and would refrain from making progress payments to the subcontractor. There is substantial evidence that at that time appellant was, in fact, insolvent. Beyond question, appellee was vitally interested in protecting its own position and living up to its commitment that B & K would be paid. Appellee's survival in its line of endeavor depends, almost entirely, upon good faith performance by the contractors and the subcontractors. On this record, appellee was faced with the immediate possibility

of incurring, at least, a very substantial loss under its bond or, even the possibility of taking over the performance of B & K's contract if its earned estimates were not paid, or at least withheld.

The indemnity agreement between the parties not only provided for a conditional assignment to appellee of the funds payable to appellant in the event of the failure to pay subcontractors for their labor and materials, but also authorized appellee, in that event, to "take any other action" it might deem appropriate. When we ask ourselves what a reasonable person might do under similar circumstances and conditions, we find only one answer. He would no doubt arrive at the conclusion that his interests were in serious jeopardy by reason of acts beyond his control and would then conclude that it was "appropriate" to request the Highway Commission to withhold further payments pending a solution of the dispute between plaintiff and B & K.

We agree with the district court that there is nothing in the record which indicates malice or a lack of good faith on the part of appellee. Appellee did not ask the Highway Commission to pay any of the money to it, nor did it seek any profit by attempting to make use of the money while the dispute was progressing between appellee and B & K. That appellant's concern respecting its exposure to a substantial loss was wholly justified is demonstrated by the fact that it was soon a defendant in an action filed against it by B & K, an action which is still pending and under which appellee might sustain substantial loss if the Highway Commission had not withheld the funds.

Appellant's argument that the issue of justification was properly before the jury is meritless. A jury issue is created only if the evidence is sufficient to warrant a finding of legal malice, which, under the Missouri authorities, is the intentional doing of a wrongful act without justification or excuse. *Downey v. United Weather Proofing, supra.* Here, the district court held that the evidence was wholly insufficient to support such a finding. We agree.

CONCLUSION

Because in our judgment the district court properly granted the motion for judgment notwithstanding the verdict, we need not inquire into the validity of its conclusions on the alternative motion for a new trial. Finding no error, we affirm the judgment of the district court.

It is so ordered.