**DECKER–RUHL FORD SALES, INC., Appellant,**

v.

**FORD MOTOR CREDIT COMPANY, Appellee.**

No. 75–1059.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1975.

Decided Oct. 7, 1975.

Donald L. James, St. Louis, Mo., for appellant.

John C. Shepherd, St. Louis, Mo., for appellee.

Before BRIGHT, Circuit Judge, KILKENNY, Senior Circuit Judge,* and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

In this diversity case, Decker-Ruhl Ford Sales, Inc. appeals from a final judgment entered against it on December 18, 1974. It contends that the District Court erred in (1) dismissing two counts of its complaint for failure to state a claim upon which relief could be granted and (2) directing a verdict for defendant Ford Motor Credit Company on a third count. We affirm.

Prior to September, 1971, Decker-Ruhl Ford Sales, Inc. ("Decker-Ruhl") operated as an authorized dealer of new vehicles manufactured by the Ford Motor Company ("Ford"). In 1970, Ford offered Decker-Ruhl a commission of 2% of the sales price of 110 trucks Ford was selling to Ryder Truck Rental, Inc. ("Ryder") if the dealer would handle the paperwork and certain tasks incidental to the sale. The dealer accepted the offer.

Because Decker-Ruhl lacked the credit capability to finance the transaction,[1] Ford Motor Credit Company ("FMCC") required the dealer to execute, as security, an "assignment of factory credits" whereby the dealer assigned to FMCC all credits that might subsequently become due to the dealer from Ford. FMCC agreed not to file the assignment with Ford (and so cause the credits actually to be paid to FMCC) "until or unless [the] dealership defaults in its obligations to Ford Motor Credit Company."

In addition, FMCC required the dealer to execute an "assignment of proceeds" for each of the 110 trucks involved in the Ryder transaction. Under the terms of this assignment, the dealer transferred to FMCC its interest in any proceeds it might receive from Ryder for the sale of the trucks.[2] The assignment was subject to certain terms and conditions, including the requirement that:

> Any and all monies, credits or other proceeds of the sale of the property received by Dealer, shall be received by Dealer in trust for FMCC and shall be fully, faithfully and forthwith

---

* Honorable John F. Kilkenny, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Because Decker-Ruhl was the dealer of record in the transaction, it was necessary for it to pay Ford for the trucks delivered to it for delivery to Ryder. Decker-Ruhl was only able to do this through credit issued by Ford Motor Credit Company.

2. The idea behind the assignment of proceeds was that all payments from Ryder could be received directly by FMCC. This would purportedly reduce the risk that any of the payments would become lost in the cash flow of the dealer.

accounted for and remitted to FMCC in the same form as received by Dealer.

Decker-Ruhl began delivering trucks to Ryder on February 9, 1970, and shortly thereafter commenced receiving checks from Ryder in payment for the trucks. Initially, these checks were cashed and the proceeds were deposited in a segregated bank account in the name of Darle D. Decker, who, in conjunction with his wife, owned all of the stock of Decker-Ruhl. As the payments were identified to a particular unit sold, the money in the segregated bank account was transferred to Decker-Ruhl's business checking account for payment to FMCC.

On March 31, 1970, when FMCC received Decker-Ruhl's "1970 Ford Dealer Financial Statement", it discovered that the dealer had charged itself with $41,-647 under its customer accommodation account, which primarily represented funds received from Ryder, but that the cash account contained only $24,852. Deeming the dealer in default under the terms of the assignment of proceeds, FMCC filed the assignment of factory credits with Ford on April 20, 1970. FMCC thereafter received all amounts due to it from the dealer on account of the Ryder transaction. However, the financial condition of the dealer steadily worsened until it went out of business in September of 1971.

Decker-Ruhl and its owners filed suit in the District Court on December 21, 1973. In a nine-count complaint, they sought actual and punitive damages for FMCC's alleged tortious interference with the contract rights of the dealer with Ford and actual damages for FMCC's breach of its contract not to file the assignment of factory credits without a default on the part of the dealer. Additional counts charged that FMCC violated the terms of the automobile wholesale plan agreement between it and the dealer.

Upon defendant's motion, the District Court[3] dismissed for failure to state a claim upon which relief could be granted all of the counts of the complaint except Count V, which charged FMCC with breach of contract.[4] A jury trial was commenced on that issue, but the District Court sustained FMCC's motion for a directed verdict at the close of plaintiffs' evidence and, on December 18, 1974, entered judgment that the action be dismissed on the merits.

Decker-Ruhl appeals (1) from the dismissal of Counts III and IV of its complaint alleging tortious interference, and (2) from the directed verdict granted FMCC on its claim under Count V for breach of contract.[5]

## I.

In our review of the dismissal of that portion of Decker-Ruhl's complaint dealing with tortious interference, we must determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Lewis v. Chrysler Motors Corp.*, 456 F.2d 605, 607 (8th Cir. 1972); *Springfield Television, Inc. v. City of Springfield*, 428 F.2d 1375, 1381 (8th Cir. 1970). Because this is a diversity case,[6] we apply the substantive law of Missouri, the forum state below. *Erie R.R. v. Tompkins*, 304

---

3. The Honorable John K. Regan, United States District Judge, Eastern District of Missouri.

4. The District Court also struck from Count V the allegations that the breach was malicious and without justifiable cause. No appeal is taken from this action.

5. Decker-Ruhl does not appeal the dismissal of the other counts of its complaint. The owners

of Decker-Ruhl do not appeal the dismissal of the action with respect to them.

6. Plaintiff is a resident of Missouri; defendant is a Delaware corporation having its principal place of business in Michigan; the amount in controversy exceeds $10,000. See 28 U.S.C. § 1332.

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

◼ Missouri law recognizes a cause of action for tortious interference with contract rights in those cases where the alleged wrongdoer "maliciously"—that is, with knowledge of the contract and without justifiable cause—induced the breach. *Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976, 980 (1953); *see Clark-Lami, Inc. v. Cord*, 440 S.W.2d 737, 741 (Mo.1969); *Coonis v. Rogers*, 429 S.W.2d 709, 713 (Mo.1968). However, in order to maintain such an action in Missouri, a plaintiff must show that an actual breach of contract occurred. Thus, in *Downey v. United Weatherproofing, Inc., supra*, 363 Mo. at 858, 253 S.W.2d at 980, the Missouri Supreme Court stated:

[T]he intentional interference with the contractual relation without just cause *so as to effect a breach of the contract* is a wrong for which the wrongdoer may be held accountable in damages. (emphasis added)

*See generally* Restatement of Torts § 766 and Comment (1939).

◼ Here, Judge Regan correctly ruled that no contract between Ford and Decker-Ruhl was breached when Ford forwarded the dealer's factory credits to FMCC. Indeed, as the attachments to Decker-Ruhl's complaint show, Ford was instructed by the dealer to forward the factory credits to FMCC in an assignment that was absolute on its face and unconditional. Ford carried out its responsibilities under the assignment exactly as it had been authorized and in-

structed to do. Since under the claim alleged in Count III Decker-Ruhl could prove no breach of its contract with Ford, it cannot maintain a cause of action against FMCC for tortious interference.[7] Decker-Ruhl's claim for punitive damages under Count IV necessarily falls with its claim for actual damages under Count III. *See Holliday v. Great Atlantic & Pacific Tea Co.*, 256 F.2d 297, 300 (8th Cir. 1958); *Coonis v. Rogers, supra*, 429 S.W.2d at 716; *Adelstein v. Jefferson Bank and Trust Co.*, 377 S.W.2d 247, 252 (Mo.1964).

II.

◼ A directed verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. *Gabauer v. Woodcock*, 520 F.2d 1084, 1091–92 (8th Cir. 1975); *Giordano v. Lee*, 434 F.2d 1227, 1231 (8th Cir. 1970), *cert. denied*, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971). In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1269 (8th Cir.), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Giordano v. Lee, supra*, 434 F.2d at 1231. There should be no directed verdict entered unless the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion. *Hernon v. Revere Copper & Brass, Inc.*, 494 F.2d 705, 709 (8th Cir.), *cert. denied*, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105

---

**7.** Decker-Ruhl directs our attention to *Law Research Service of Missouri, Inc. v. Western Union Tel. Co.*, 336 F.Supp. 510, 511 (E.D.Mo. 1971), in which the District Court stated:

The promisee may recover for any act which retards, makes more difficult, or prevents performance or makes performance of a contract of less value to him.

This opinion does not purport to be a statement of Missouri law. Moreover, it does not

reveal the factual circumstances or allegations upon which it is based. We do not regard it as persuasive authority on Missouri law, especially since the Supreme Court of Missouri has so clearly defined tortious interference in terms of breach. *See Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976, 980 (1953).

(1974). Applying this strict standard, we are convinced after a thorough review of the record that the District Court did not err in directing a verdict in favor of defendant FMCC on Decker-Ruhl's breach of contract claim.

FMCC agreed that it would not file the assignment of factory credits only if the dealer did not default on any of its obligations to FMCC. Included in these obligations were the terms and conditions of the assignment of proceeds executed by Decker-Ruhl—to receive any funds from Ryder in trust, to faithfully account for them, and to remit them to FMCC in the same form received. The dealer defaulted on these obligations in two ways.

First, by cashing the checks and depositing the proceeds, the dealer failed to forward the proceeds to FMCC in the same form received.[8]

Second, Decker-Ruhl's use of the proceeds from the Ryder deal as its own money was unquestionably a prohibited transaction. By executing the assignment of proceeds and agreeing to its terms and conditions, the dealer became a fiduciary with respect to the Ryder funds it collected. See Hamby v. St. Paul Mercury Indemnity Co., 217 F.2d 78, 80 (4th Cir. 1954), quoting Commissioner v. Owens, 78 F.2d 768, 773 (10th Cir. 1935); Consolidated Oil & Gas, Inc. v. Ryan, 250 F.Supp. 600, 604 (W.D. Ark.), aff'd per curiam, 368 F.2d 177 (8th Cir. 1966); Dimity v. Dimity, 62 S.W.2d

859, 861–62 (Mo.1933); Patton v. Shelton, 328 Mo. 631, 40 S.W.2d 706, 712–13 (1931); In re Mansour's Estate, 238 Mo.App. 623, 185 S.W.2d 360, 369 (1945); Klika v. Albert Wenzlick Real Estate Co., 150 S.W.2d 18, 23–24 (Mo. App.1941); Selle v. Wrigley, 233 Mo.App. 43, 116 S.W.2d 217, 220–21 (1938); cf. State v. Russell, 265 S.W.2d 379, 381 (Mo.1954). As of March 26, 1970, all the money that had been collected from Ryder was transferred from the special account set up by Darle D. Decker to the dealer's bank account, but that money was not paid to FMCC until mid-April, 1970. As of March 31, 1970, the dealer's balance sheet showed a customer accommodation account of $41,647, primarily representing funds collected from the Ryder transaction and not yet paid to FMCC, but only $24,852 cash on hand. Darle D. Decker could not account for where the money had gone. The only reasonable conclusion to be drawn from these facts is that the dealer used some of the proceeds from the Ryder transaction to operate its business during the first part of April, 1970. This clearly constituted a default on its obligations under the assignment of proceeds.[9]

It can only be concluded from the evidence that the filing of the assignment by FMCC with Ford did not occur until after the dealer's default and there was thus no breach of contract. The directed verdict was properly granted.

The judgment of the District Court is affirmed.

8. A literal reading of this condition of the assignment of proceeds is not necessary to support the District Court's conclusion that a default had occurred. Even if the clause is construed as permitting Ryder checks to be deposited and proceeds therefrom transmitted promptly by dealer checks as a matter of routine record keeping, the record is clear that this was not the practice followed.

9. The dealer's explanation at trial that the discrepancy resulted from its accounting procedure of showing cash as reflecting checks written but not cashed does not wash. A statement from the dealer's bank dated March 31, 1970, showed that the actual balance in the business bank account was only $29,557.80— still far below the amount the dealer had collected on behalf of FMCC from the Ryder transaction.