**Ravi XAVIER, M.D., Appellant,**

v.

**BUMBARNER & HUBBELL ANESTHESIOLOGISTS,**
**Defendant,**

**Jones, Pirotte & Patton, Respondent,**

**Yates & Hubbell, Respondent.**

**No. WD 50913.**

Missouri Court of Appeals,
Western District.

Submitted Jan. 11, 1996.

Decided March 26, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 1996.

Application to Transfer Denied
June 25, 1996.

J.C. Hambrick, Jr., Kansas City, for appellant.

John Roark, Glen R. Ehrhardt, Columbia, for respondents.

Before Hanna, P.J., and SMART and ELLIS, JJ.

SMART, Judge.

Ravi Xavier appeals from orders of the Boone County Circuit Court dated August 4, 1992 and June 20, 1994 dismissing his petition for injunctive relief against respondents Robin R. Jones, M.D., Larry Pirotte, Joyce Patton, Charles Yates, M.D., Ira Hubbell, M.D., and Mid–Missouri Anesthesiologists, Inc. ("MMAI").[1] Xavier presents two points on appeal, claiming that the trial court erred: (1) in dismissing the claims that he brought as a former shareholder of Bumgarner & Hubbell Anesthesiologists, Inc. ("B & H") against certain individual defendants, other former shareholders, for breach of fiduciary duty and conspiracy; and (2) in dismissing the claims he brought as an individual against other individual defendants and MMAI because they conspired to deprive him of his business. The orders of the trial court are affirmed.

### Standard of Review

■ The trial court's orders dismissing the action will be reviewed as if they were grants of summary judgment. Normally, a motion to dismiss is confined to the sufficiency of the pleadings on their face. *Mead v. Conn*, 845 S.W.2d 109, 110 (Mo.App.1993). A motion to dismiss for failure to state a claim upon which relief can be granted is treated as a motion for summary judgment where additional matters are presented to and not excluded by the trial court. Rule 55.27(a); *Geary v. Missouri State Employees' Retirement Sys.*, 878 S.W.2d 918, 921 (Mo.App. 1994). In the instant case, evidence was introduced by the plaintiff outside of the pleadings. On May 21, 1991, the trial court received evidence pertaining to Xavier's application for a TRO and preliminary injunction. Xavier is charged with the knowledge that the motions to dismiss were converted to motions for summary judgment. *Id.* When the parties introduce evidence beyond the pleadings, a motion to dismiss is converted to a motion for summary judgment. *Hyatt Corp. v. Occidental Fire & Casualty Co.*, 801

S.W.2d 382, 392 (Mo.App.1990). Both parties knew that the court would consider evidence beyond the pleadings, and both parties sought to make use of the evidence. Accordingly, we review this matter under a summary judgment standard of review.

■ Our review is *de novo* and conducted in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A party is entitled to summary judgment only when that party is entitled to judgment as a matter of law because "there is no genuine issue as to any material fact." Rule 74.04(c)(3).

### Facts

Xavier, Hubbell and Yates were the sole shareholders of Bumgarner & Hubbell Anesthesiologists, Inc. ("B & H") a company which, among others, provided anesthesiology services to Columbia Regional Hospital. Jones was an anesthesiologist in the employ of B & H. Pirotte and Patton were also employees of B & H. Jones, Pirotte and Patton were all working under employment contracts with the corporation which included non-compete provisions. Jones became unhappy with the conditions at B & H and announced her intention to leave.

B & H held a joint annual meeting of directors and shareholders on April 24, 1991, shortly after the announcement that Jones was leaving. Hubbell had also indicated earlier that he was leaving the employment of the firm, but would continue to provide services on a contract basis. Hubbell, Yates, and Xavier were present at the April 24 meeting. Minutes from that meeting show that there was discussion of turmoil among the employees of the corporation. The minutes indicate a major conflict existed between Xavier and Jones. Dr. Yates stated the main reason for Dr. Jones' resignation was that Dr. Jones could no longer work with Dr.

---

1. Xavier's first amended petition also named Bumgarner & Hubbell Anesthesiologists, Inc. ("B & H") as a defendant. The notice of appeal filed by Xavier includes an order of the trial court dated March 3, 1995 dismissing the actions

as to B & H without prejudice. The order dismissing B & H is not an appealable order. *See Adams v. VanWormer*, 892 S.W.2d 655, 656 (Mo. App.1994).

Xavier. Dr. Xavier informed the other shareholders that the inability to work together between him and Dr. Jones was "mutual." The question of dissolution of the corporation was raised. A motion to dissolve the corporation was passed, 2 to 1, with Xavier dissenting. Articles of dissolution were subsequently filed with the Secretary of State's office, and a certificate of dissolution was issued. After voting to dissolve the corporation, Yates and Hubbell, together with Jones, then formed a new corporation, MMAI. Pirotte and Patton went to work for MMAI. Xavier was not invited to participate. MMAI now provides anesthesiology services to Columbia Regional Hospital on a non-exclusive basis. Xavier also separately performs anesthesiology services for Columbia Regional Hospital since the dissolution of B & H.

Initially, Xavier sought temporary injunctive relief which was denied by the trial court after a full evidentiary hearing. On November 26, 1991, Xavier filed his first amended petition seeking a declaratory judgment, permanent injunctive relief and damages against Robin R. Jones, M.D., Larry Pirotte, Joyce Patton, Charles Yates, M.D., Ira Hubbell, M.D., and Mid–Missouri Anesthesiologists, Inc., and Bumgarner & Hubbell Anesthesiologists, Inc. Attached to the petition were copies of the employment contracts of Jones, Pirotte and Patton and a copy of Hubbell's letter of resignation.

Xavier's petition contained ten separate counts. In the first six counts Xavier purports to sue as a shareholder of B & H. The remaining counts are brought by Xavier as an individual. Count I of Xavier's petition seeks a declaration "that Bumgarner and Hubbell is a viable corporation under the laws of the State of Missouri" and asking the court to identify the shareholders and officers of the corporation and their rights and obligations. Count II is a petition for a permanent injunction against Jones, Pirotte and Patton enforcing the non-compete provisions in their employment contracts with B & H. Count III is a breach of contract claim against Jones, Pirotte and Patton. Count IV is a tortious interference with contract claim against Yates, Hubbell, Jones and MMAI.

Xavier seeks damages as a shareholder of B & H claiming that Yates, Hubbell, Jones and MMAI induced Pirotte and Patton to breach their employment contracts with B & H. Count V alleges that Yates and Hubbell breached their fiduciary duty to B & H. Count VI alleges a tortious interference with business relations against Yates, Hubbell, Jones and MMAI. The remaining counts in the petition are brought by Xavier as an individual. Count VII alleges prima facie tort against Yates and Hubbell. Count VIII alleges breach of fiduciary duty against Yates and Hubbell. Count IX is a civil conspiracy claim brought by Xavier against Yates, Hubbell, Jones, and MMAI. In this count, Xavier alleges that, "Defendants Yates, Hubbell, Jones, and Mid–Missouri Anesthesiologists entered into an agreement to force Plaintiff out of any business relations by and between Defendants Yates, Hubbell, and Jones and by and between Bumgarner & Hubbell and its clients by attempting to dissolve Bumgarner & Hubbell, by extinguishing all employment contracts and non-compete covenants, by forming a new and competing corporation, and by transferring corporate assets of Bumgarner & Hubbell without proper corporate authority." Count X is a claim for "oppressive conduct" against Yates and Hubbell.

The court below sustained motions to dismiss the claims against Yates, Hubbell, Jones, Pirotte and Patton on August 4, 1992, after a hearing on the matter on July 13, 1992. Service on MMAI was not had until early in 1994. MMAI filed a motion to dismiss which was sustained by the trial court on June 20, 1994. Xavier appeals from the orders of August 4, 1992 and June 20, 1994.

### Standing as to Derivative Claims

◼ In his first point on appeal, Xavier claims that the trial court erred in dismissing the claims that he brought as a former shareholder because he did represent the shareholders' interests in that Hubbell and Yates, the other former shareholders, breached their fiduciary duty by dissolving the corporation and conspiring to damage him. Rule 52.09 sets out the requirements for a derivative action by a shareholder. It states, in pertinent part:

The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.

■ This court in *Dawson v. Dawson,* 645 S.W.2d 120, 125 (Mo.App.1982), addressed the issue, stating:

Although the fiduciary relationship of a director or officer of a corporation to the shareholders is well-recognized, that relationship is generally held to be between the directors and the shareholders *as a whole.* Corporate shareholders cannot in their own right and for their own personal use and benefit maintain an action for the recovery of corporate funds or property improperly diverted or appropriated by the corporation's officers and directors. The injury is to the corporation—to the shareholders collectively—and not to the shareholders individually. The right to maintain the suit is a right of the corporation, and therefore, the suit must be brought derivatively.

(Citations omitted).

The representation requirement is not met where there is a conflict of interest or the existence of antagonism between a plaintiff and other shareholders "arising from differences of opinion concerning the best method of vindicating the corporate claim." *Dawson,* 645 S.W.2d at 128 (quoting *Sweet v. Bermingham,* 65 F.R.D. 551, 554 (S.D.N.Y.1975)). This is especially true in a circumstance such as a small corporation, where the shareholders are the corporation's principals. There is no separate group of shareholders having interests which are distinct from the interests of the principals. Xavier's interests were directly in conflict with the only other two shareholders of the now defunct corporation. Xavier attempts to distinguish between a shareholder acting for the corporation and a shareholder acting in his own interest to defeat the interests of the corporation. This distinction, presented without citation, misapprehends the issue of whether Xavier has standing to maintain a derivative suit on behalf of B & H. Xavier's professed selfless devotion to the welfare of the dissolved corporation is immaterial. Point I is denied.

## Individual Claims

■ In Point II, Xavier argues: "The trial court erred in dismissing individual actions against Jones, Hubbell, Yates and Mid–Missouri because they conspired to deprive plaintiff of his business in that they conspired to directly interfere with a valid business and in fact did interfere with that business expectation and relationship." The content of this Point Relied On fails to comply with Rule 84.04 in that it fails to point out, with reasonable specificity, the error of the trial court. *See Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). Nevertheless, *ex gratia,* we attempt to discern the nature of Xavier's argument. Xavier argues that there was a "conspiracy" between Jones, Hubbell and Yates to interfere with a business relationship. Count IX of Xavier's petition, states: "Defendants Yates, Hubbell, Jones, and Mid–Missouri Anesthesiologists entered into an agreement to force Plaintiff out of any business relations by and between Defendants Yates, Hubbell, and Jones and by and between Bumgarner & Hubbell and its clients by attempting to dissolve Bumgarner & Hubbell, by extinguishing all employment contracts and non-compete covenants, by forming a new and competing corporation, and by transferring corporate assets of Bumgarner & Hubbell without proper corporate authority." Since the Point Relied On appears to relate only to count IX, Xavier has abandoned any claim of error with regard to the trial court rulings on Counts VII (prima facie tort), VIII (breach of fiduciary duty), and X (oppressive conduct). *See Kabir v. Missouri Dept. of Soc. Services,* 845 S.W.2d 102, 102–03 (Mo.App.1993). With regard to Count IX, once again it appears that Xavier is complaining of interference in relationships of "Bumgarner & Hubbell and its clients" rather than complaining of interference with relationships between Xavier and his clients. As we have already discussed, Xavier has no standing to assert claims in behalf of the corporation. Also, Count IX does not state a claim for "civil conspiracy." There is no such tort, as such. *Royster v. Baker,* 365 S.W.2d 496, 500 (Mo.1963). Any conspiracy among defendants bears merely on their liability as joint tortfeasors. *Id.* Conspiracy, in and of itself, is not actionable in the absence of an underlying wrongful act or tort. *Williams v.*

*Mercantile Bank of St. Louis,* 845 S.W.2d 78, 85 (Mo.App.1993). As far as the attempt to allege tortious interference with business relationships, Xavier's Count IX does not allege that such actions were conducted "without justification" or set forth any facts tending to suggest the absence of legal justification. It is necessary, when attempting to plead a cause of action for tortious interference with a contractual relationship, to plead that the interference was without legal justification. *Downey v. United Weatherproofing Inc.,* 363 Mo. 852, 253 S.W.2d 976 (1953). Instead, Xavier alleges only that it was "without proper corporate authority." The record reveals that the corporation was legally dissolved by majority vote at the annual shareholder's meeting. Xavier does not argue that there was a violation of any specific provision of Missouri corporation law committed by Hubbell and Yates. Consequently, he offers no factual or legal explanation for the conclusion that the actions of the defendants were "without proper corporate authority." On consideration of motions for summary judgment, bare legal conclusions, without the specification of factual contentions, can be disregarded. *Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc.,* 905 S.W.2d 529, 533 (Mo.App.1995). Nor does Xavier allege that Yates and Hubbell were in violation of any contractual duty to Xavier.

Even if Xavier had superficially pleaded a cause of action for tortious interference with business relationships, however, he still would have been subject to an adverse ruling on summary judgment because Xavier's idea of wrongful conduct does not correspond to the law. Before the law will recognize actions like those of Yates and Hubbell (in dissolving the corporation and forming a new professional entity) as being actionable in tort, the law requires a showing that the actions involved an unlawful restraint of trade, or that the defendants made use of an unlawful means (such as fraud) in such interference. *Community Title v. Roosevelt Fed. Sav. & Loan,* 796 S.W.2d 369, 372 (Mo. banc 1990). *See* 86 C.J.S. Torts § 44 (1954); Restatement (Second) of Torts § 766–69 (1977).

In the context of this tort, improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law.

*Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 317 (Mo. banc 1993). In the absence of improper means, the principle of freedom of competition provides protection for one's efforts to take business from another. *Downey,* 253 S.W.2d at 982. Here, there was no articulation of an accompanying wrongful or illegal act. The nature of Xavier's complaint is that Yates and Hubbell terminated their business relationship with Xavier in order to induce Jones to remain a part of their practice. Such a complaint fails to state a cause of action. It is not the business of the law to regulate every aspect of the personal loyalties of shareholders and partners within the marketplace of business and professional associations. Some things are left to the conscience and the character of the participants.

### Conclusion

The trial court did not err in entering judgment for the respondents on Xavier's claims. The orders of the trial court are affirmed.

All concur.